THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VITTORIO DeVORE, Defendant-Appellant.

First District (2nd Division)   No. 76-1627

Opinion filed July 11, 1978.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Francis X. Speh, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

After a jury trial, defendant, Vittorio DeVore, was found guilty of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1) and sentenced to a term of 15 years to 45 years in the penitentiary. Defendant, who was a juvenile, contends that the trial court improperly denied his right to a speedy trial by permitting the State an extension of time to commence trial beyond the expiration of the 120-day statute (Ill. Rev. Stat. 1975, ch. 38, pars. 103—5(a) and 103—5(c)); that the trial court imposed an excessive sentence; and that he was denied due process of law when the judge in the juvenile division permitted transfer of the cause to the criminal division without giving a statement of reasons for his order (Ill. Rev. Stat. 1973, ch. 37, par. 702—7(3)).

The record discloses that the 120-day period prescribed by the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)) was due to expire on February 7, 1976. On February 6, 1976, the State filed a motion to extend the term for 60 days (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(c)) on the ground that two material witnesses to the incident could not be located "after due diligence" by the State since January 26, 1976, the date on which trial was originally scheduled to commence in the matter. The motion alleged that since January 26, several attempts to locate these witnesses had proved fruitless and that, given additional time, there existed reasonable grounds to believe they could be produced for trial.

Hearing on the motion for the extension of time was held on February 6. Trial of the matter initially was set for January 26. Through one of the assistant State's attorneys prosecuting the matter and two investigators of the Cook County sheriff's department, the State adduced evidence that it was unsuccessful in serving subpoenas on eyewitnesses Albert Johnson, Durrell Scott and Durand Scott on January 5, 1976. On January 23, which was a Friday, one of the investigators went to the residences of Johnson and the Scotts which were listed in the police reports. He learned that the Johnson family had moved "within the month." And he also learned from the Scotts' brother that Durand Scott was in the State of Mississippi and that Durrell Scott was attending night school and would not be available until later that night. The investigator left the subpoena for Durrell with the brother, with instructions that Durrell should telephone the assistant State's Attorney on Monday, January 26. Durrell did not contact the attorney.

It was further brought out at the hearing on the motion for the extension that on January 27 or 28, the investigator determined the location in Mississippi of Durand Scott from Scott's father, and he also left word with the father to have Durrell contact the assistant State's Attorney the following morning. Again, Durrell failed to contact the attorney. It was also disclosed that the new residence of the Johnson family had been determined during that time.

On January 30, 1976, the assistant State's Attorney in charge of the case assigned two Chicago police officers to locate Albert Johnson and Durrell Scott. The officer assigned to the Johnson matter informed the attorney that he had been to the Johnson residence but received no response to his knock at the door. The officer assigned to the Scott matter reported to the attorney that he received no answer when he appeared at the Scott residence on January 30, but that a subsequent telephone call to that location resulted in a conversation with a woman, who stated Durrell Scott was not at home. The officer advised her to tell Durrell to contact the assistant State's Attorney at a stated telephone number. The attorney testified that he remained at that number until 6:30 p.m. that day but received no contact from Durrell. He also related that he assigned an investigative team from the State's Attorney's office to pursue the matter at 4:30 p.m. on January 30, which was a Friday, and that the following Monday the team reported only that contact with an "Andrew Johnson" resulted in the response that Albert Johnson was "out of town." Also on January 30, the attorney turned over the matter of locating Johnson and Durrell Scott to the night staff of the State's Attorney's office. The assistant further testified that he spoke to Durand Scott in Mississippi by telephone on Monday, but Durand only wished to know if the attorney was from the office of defendant's counsel.

The State argued that it had demonstrated due diligence in its attempt to locate the three eyewitnesses prior to trial, and represented to the court that given additional time it could produce the witnesses for trial. The State related that it intended to place a 24-hour surveillance on the residences of Johnson and the Scotts, and that it would subpoena both families before the grand jury to determine the whereabouts of the men. The State also indicated it required additional time to secure the presence of Durand Scott from Mississippi. Defendant argued that he had been incarcerated for about 18 months on this charge, that the State failed to prove due diligence, and that he should either be allowed to go to trial on the matter or released from custody. The trial court permitted a 60-day extension of the trial, on the condition that the State demonstrate its good efforts to locate the eyewitnesses in 14 days, at which time the court would reconsider its 60-day order.

Two eyewitnesses testified for the State at trial, Albert Johnson and

Durand Scott. Scott testified under a grant of immunity, and the record discloses that his brother, Durrell, could not be located as a witness. Since defendant does not challenge the sufficiency of the evidence in support of his conviction, a lengthy summary of the evidence adduced at trial is not necessary.

The record discloses that Felton Robinson, 20 years old, died as a result of a gunshot wound to the left portion of his chest. The bullet entered near the armpit and traveled through the lung and spinal cord. When the police arrived at the scene of the shooting, on a residential street on Chicago's South Side, they found no one in the area other than the deceased and, apparently, his father. A canvass of the area homes disclosed information leading to Johnson and the Scott brothers, and after these three youths were located by the police, defendant was also located and arrested for the shooting. All four of these youths were about 16 years old at the time. Johnson and the Scott brothers gave written statements to the police the same night.

The deceased's father, Herbert Robinson, testified that on the night in question, an unidentified youth called for the deceased at the Robinson home. The witness summoned his son from bed, informed him of the caller, and then himself returned to bed. Ten to 15 minutes later another youth came to the witness' house and informed him that his son had been shot. Shortly after he arrived at the scene, and while attempting to locate wounds on his son's body, this witness found a packet of tobacco in the youth's pocket which the police told him was marijuana.

Albert Johnson and Durand Scott testified in essentially the same manner, except as shall be detailed later. Johnson and the two Scott brothers had been talking in front of the Scott residence about 9:30 p.m. on August 3, 1974, and were joined later by the defendant. The youths had known each other for several years. Another youth, named Schafer, entered the scene, spoke to defendant, and received a pair of sunglasses from defendant. After Schafer left the scene, Felton Robinson joined the group, at which time defendant walked to the other side of the street where he conversed with an unidentified man for 10 to 15 minutes. Albert Johnson testified that he heard no conversation between defendant and Robinson when the latter joined the group. But Durand Scott testified that defendant accused Robinson of threatening to kill defendant, and Robinson replied affirmatively. Scott stated that Robinson had joined the group and attempted to "show off." After defendant returned from across the street, he approached Robinson. Johnson testified he had his back to those two youths at that time, and that several minutes later he heard a gunshot. He then observed Robinson on the ground and defendant standing over him with a gun in his hand. Durand Scott, on the other hand, testified that defendant and Robinson continued their argument

after defendant returned from across the street, at which time defendant shot Robinson. Johnson related that as defendant stood over Robinson with the gun, he told Robinson to "drop your ends," which was slang for money, and that Robinson then reached into his pocket and threw an article onto the ground. Defendant picked up the article and ran from the scene. Johnson denied that he or anyone else in the group had been drinking alcohol or smoking marijuana prior to the shooting, but Durand Scott testified that the group was "sitting around getting high" on alcohol and marijuana at the time Robinson joined them.

Defendant adduced the testimony of four character witnesses as to his good reputation for peace and good order in the community, as well as testimony of another witness that a purchase of marijuana had been made from the deceased shortly prior to the shooting.

During the hearing in aggravation and mitigation, after the jury's verdict of guilty, the State represented to the court that defendant had no prior criminal record and argued only the facts of the case in aggravation of the offense. The defense alluded to defendant's youth and his lifestyle in requesting a minimum sentence. The trial court sentenced defendant to a term of 15 years to 45 years, commenting that the maximum was three times the minimum term imposed to permit the parole board the opportunity to determine if defendant had adjusted. The court later noted the "viciousness" of the offense in denying defendant's motion for an appeal bond.

Defendant argues that the trial court was in error in permitting the State additional time to secure the presence of its witnesses since it failed to demonstrate due diligence in its unsuccessful attempt to secure their presence prior to the expiration of the 120-day term, as required by the Code of Criminal Procedure. Ill. Rev. Stat. 1975, ch. 38, par. 103—5(c).

■■■ Extension of the 120-day term rests in the sound discretion of the trial court, and its determination in that regard will not be disturbed on appeal unless clearly abused. Exercise of that discretion must be viewed in light of the facts as they existed at the time the matter was presented to the trial court, and not as they might have ultimately developed or as they appear in retrospect. *People v. Arndt* (1972), 50 Ill. 2d 390, 393, 280 N.E.2d 230.

■■ The foregoing summary of the evidence adduced by the State at the hearing on its motion for the extension demonstrates that it had exercised due diligence in its unsuccessful attempt to locate its witnesses. The attempt by the State to secure the three eyewitnesses for trial commenced about five weeks prior to expiration of the 120-day term. It was later determined that one of the three eyewitnesses was out of the State, and that two were still available but could not be found. Concerted efforts of the State for two weeks, to and including the date of the hearing on the

motion, demonstrated that the two witnesses yet in Chicago could not be located and that they failed to respond to contacts made with members of the family. Only at that time could it have been concluded that they were deliberately attempting to avoid service of a subpoena to appear for trial. Upon being advised of the situation, and upon being advised of the more legally forceful steps to be taken by the State in securing the presence of the witnesses, the trial court properly allowed the State additional time to locate the witnesses, subject to the State's ability to demonstrate in two weeks its good efforts in that regard. We find the trial court did not abuse its discretion in permitting additional time to the State to secure its witnesses to the offense.

The case cited by defendant in support of his position is not applicable to the instant circumstances. *People v. Shannon* (1st Dist. 1975), 34 Ill. App. 3d 185, 340 N.E.2d 129, involved an effort by the State to secure its witnesses between four and six days before expiration of the 120-day term, where the State could easily have determined long beforehand that they would not be available for trial on the date set. *Shannon* inapposite for the reason that, here, the State could not determine that the witnesses in Chicago would be "unavailable" for trial until these witnesses demonstrated a deliberate attempt to avoid appearing. Moreover, the *Shannon* case was later expressly distinguished by the same court in *People v. Robinson* (1st Dist. 1976), 44 Ill. App. 3d 447, 358 N.E.2d 43, where, as here, the State had no reason to believe the witnesses would be unavailable when the initial efforts were commenced to secure their attendance at trial.

■■ Defendant also contends that the trial court imposed an excessive sentence. He says that the trial court failed to consider his history and character in imposing a minimum term in excess of that prescribed by the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1)), and that the overall sentence fails to consider his lack of criminal record and his youthful age. On the contrary, the trial court stated that the crime committed by defendant was "vicious," which clearly was the reason for the minimum term one year in excess of that prescribed by the Code. Moreover, the court explained its reason for imposing a maximum term of 45 years as providing the parole board with the opportunity to determine if defendant had adjusted. And in view of the fact that the trial court, during the trial, observed the demeanor of the defendant, and heard evidence relating to his having shot an unarmed youth during an apparent robbery, we cannot say that the trial court abused its discretion in imposing the sentence of 15 years to 45 years upon defendant. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Finally, defendant contends he was denied due process of law. He says that section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par.

702—7(3)) governs the transfer of matters otherwise subject to the Act for prosecution under the criminal laws, but this section does not require the judge, who presides at the transfer hearing, to set forth reasons for his decision to transfer the cause. Section 2—7(3) provides in pertinent part:

"(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

The record shows that a hearing was conducted to determine if defendant should be tried as an adult. At this hearing Officer Banahan testified concerning the facts disclosed by his investigation which showed that defendant approached deceased, who was unarmed, and fatally shot him. The court was also advised of defendant's prior juvenile record. It consisted of an admission to two counts of an unlawful use of a weapon and findings concerning battery and possession of marijuana. The record also suggests that defendant was placed on supervision as a "runaway." The defendant's probation officer stated that no existing juvenile court facilities had not been previously utilized on behalf of defendant.

The record also showed defendant had entered a Job Corps program but left this program one month later. No evidence was presented on behalf of defendant, who was represented by counsel.

At the conclusion of the hearing, the court allowed the motion to transfer defendant to be tried as an adult. The court did not explain its reasons for doing so.

While section 2—7(3) does not statutorily mandate that the court at a transfer hearing give reasons for its decision, defendant maintains such

action is constitutionally required. He principally relies on *Stokes v. Genakos* (D. Mass. 1977), 441 F. Supp. 147, and lower Federal court authorities therein cited. In *Stokes* the district court interpreted *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045, and *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, as constitutionally requiring a statement of reasons by the trial court before it may approve a juvenile's transfer to trial as an adult. Several State courts have also set forth the requirement that specific findings be made by trial courts to justify the decision to bind over a juvenile accused of a criminal violation for trial as an adult. *E.g., D. H. v. State* (1977), 76 Wis. 2d 286, 251 N.W.2d 196, and *Atkins v. State* (1972), 259 Ind. 596, 290 N.E.2d 441; *People v. Mahone* (1977), 75 Mich. App. 128, 254 N.W.2d 907.

The reason advanced by defendant for requiring the statement of reasons is to provide meaningful review of the transfer decision and determine if adequate bases existed to justify the transfer or if the trial court acted arbitrarily. Defendant makes only one claim to any questionable factor which, he speculates, might have influenced the trial court in the transfer proceeding. He asserts the court was informed he had been found to be a minor in need of supervision (Ill. Rev. Stat. 1973, ch. 37, par. 702—3) which does not entail delinquent activity, and without a statement of reasons he says that it is unknown whether this factor influenced the court.

■■ While we do not disagree with defendant's assertion that the transfer proceeding was of critical import (*Kent v. United States*), we do not believe the transcript of that hearing precludes proper review merely because the trial court did not elucidate reasons for transferring defendant to the criminal division for trial as an adult. The record clearly shows that the trial court was presented with evidence that would permit defendant, who was 16 years of age, to be indicted by a grand jury for murder; that defendant acted in an aggressive and premeditated manner; that defendant had previously been found delinquent for a weapons offense and battery; and that juvenile facilities had been utilized on defendant's behalf without success. (Ill. Rev. Stat. 1973, ch. 37, par. 702—7(3)(a)(1—5).) It is further apparent that the trial court's order transferring defendant indicates its determination that the "best interest of the minor and security of the public" might require that the minor be held in custody or placed on supervision "beyond his minority" (par. 702—3(a)(6)). After review of the record, we conclude the trial court's transfer decision was not against the manifest weight of the evidence (*People v. Curry* (1975), 31 Ill. App. 3d 1027, 335 N.E.2d 515), even if that court did consider the fact defendant may have been found to be a minor in need of supervision. In fact the overwhelming evidence demonstrates the correctness of that decision. (See *People v. Underwood* (1978), 72 Ill.

420

2d 125, ___ N.E.2d ___.) Meaningful review of the transfer decision has not been denied defendant under the circumstances presented.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

PERLIN and BROWN, JJ., concur.