(Nos. 49818, 49869.— ▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID PRECUP *et al.*—(Terry Lee Brummell *et al.,* Appellants.)

*Opinion filed Sept. 19, 1978.—Rehearing denied Dec. 1, 1978.*

8

Richard J. Wilson, Deputy Defender, and John L. Swartz and Barbara A. Chasnoff, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant Terry Brummell.

James L. Palmer, of Scholz, Staff & Brickman, of Quincy, for appellant Steven Harness.

William J. Scott, Attorney General, of Springfield, and

Robert J. Bier, State's Attorney, of Quincy (Donald B. Mackay, Melbourne A. Noel, Jr., and Thomas C. Crooks, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendants, Steven Harness and Terry Brummell, along with David Precup, were jointly indicted and tried in Adams County for armed robbery and were convicted of that offense following a jury trial. Each of these three appealed their convictions, which the appellate court affirmed, with one justice dissenting (50 Ill. App. 3d 23). We allowed petitions for leave to appeal of Harness and Brummell and consolidated the cases in this court.

In the trial court both Harness and Brummell were represented by John T. Inghram IV, a public defender, by appointment of the court. The question raised in this court is whether, under the facts of this case, dual representation by counsel deprived these defendants of their constitutional right to effective assistance of counsel.

This court has adopted a *per se* rule holding that it is unnecessary to establish prejudice where counsel, because of his conflicting interests or potentially conflicting interests, is or may be adversely affected in his ability to defend his client. (*People v. Stoval* (1968), 40 Ill. 2d 109; *People v. Kester* (1977), 66 Ill. 2d 162; *People v. Coslet* (1977), 67 Ill. 2d 127.) However, representation of multiple defendants by itself does not impinge upon the constitutional right. The Supreme Court of the United States has held that permitting one attorney to represent multiple defendants is not a *per se* violation of the constitutional guarantee. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) This court has so held in *People v. Durley*

(1972), 53 Ill. 2d 156. The practice of multiple representation, however, has been critized. (See Note, *Criminal Codefendants and the Sixth Amendment: The Case for Separate Counsel,* 58 Geo. L.J. 369 (1969); Cole, *Time For A Change: Multiple Representation Should Be Stopped,* 2 Nat'l J. Crim. Def. 149 (1976).) And the potential for a conflict of interest in representing multiple defendants is recognized in the American Bar Association standards relating to the administration of criminal justice. See ABA Standards, The Defense Function sec. 3.5 (1971).

The law is now firmly established that when a timely objection to joint representation is made and the court, nonetheless, requires joint representation of parties with conflicting or antagonistic interests, it is not required that a defendant prove that he has been prejudiced. (*Glasser v. United States; Holloway v. Arkansas.*) The dissenting justice in the appellate court, relying on *People v. Bopp* (1917), 279 Ill. 184, pointed out that in that case, as in the case at bar, the attorney represented defendants with conflicting alibis. In *Bopp,* this court reversed defendant's conviction and remanded the cause to the trial court for a new trial. In *Bopp,* however, as in *Glasser v. United States* and *Holloway v. Arkansas,* the court was informed by counsel prior to trial that there was a conflict in the positions of the two defendants.

This case can be distinguished from *Bopp, Glasser v. United States,* and *Holloway v. Arkansas* in that in this case it was never suggested to the court by counsel or by either of the defendants, at any time before or during the trial, that there existed a potential antagonism in the positions of the two defendants which could impair counsel's ability to fully represent them.

In the consolidated case now before this court, the record does not contain the proceedings at which counsel was appointed to represent these two defendants. This

inadequacy makes it impossible to tell whether the defendants were admonished as to any possible impairment of their right to effective assistance of counsel if they were represented by the same attorney. (See ABA Standards, The Function of the Trial Judge sec. 3.4(b) (1972).) Later, at the arraignment of defendant Brummell, at which Inghram appeared representing that defendant, the colloquy between counsel and the court indicated that attorney Lawrence Blickhan had represented Brummell at preindictment proceedings. Also, both Blickhan's and Inghram's names appear as counsel on the post-trial motion filed on behalf of both defendants. Blickhan argued the post-trial motion to the court.

At about 12:20 a.m., August 5, 1974, three armed men robbed the Nutshell tavern in Quincy, Illinois. That same morning defendants Brummell and Harness were arrested, and later that day David Precup was arrested. The three were jointly indicted. Precup was represented by one attorney and Brummell and Harness were both represented by Inghram. Precup was identified by the operator of the tavern and by a patron as one of the robbers. Nobody identified Brummell or Harness as being involved in the robbery. Each of these men had given an account of his activities during the evening to a police officer shortly after he had been arrested. It is the content of these statements which defendants now contend creates the conflicting or antagonistic positions which they argue make it impossible for one attorney to effectively represent both. Although the written statements of these two defendants were not offered into evidence, it appears that the statements had been reduced to writing, since, during the examination of the police officer as to the statement of one defendant, Inghram stated that he had a copy of the statement. During the presentation of the People's case in chief, the police officer testified without objection as to the account these defendants gave concerning their activi-

ties on the night of the robbery of the tavern. This officer was the last witness to testify during the People's case in chief.

The officer testified that Harness said he went to a tavern called the Establishment (not the tavern involved in this robbery) that night at about 10:30, where he met Brummell and Precup. He and Brummell stayed at the tavern until about closing time. Precup had left previously. When he and Brummell left they went to Precup's apartment and stayed until about 2 a.m.

This officer testified that Brummell, in his account of his activities, said that he went to the Establishment tavern that night and that Harness came in later. The officer at first stated that Brummell said they stayed until about closing time. The prosecutor then directed his attention to Brummell's statement, and he then changed his testimony and stated that Brummell said they stayed until a quarter to 12 or 12 o'clock. However, on cross-examination after again referring to Brummell's statement, he said that Brummell had stated they stayed until about closing time (1 a.m.). After leaving the tavern, Brummell stated that he and Harness went riding "in the north bottoms" in his car. He said that he had not seen Precup that evening and had not been at Precup's apartment. He also stated that shortly before his arrest he did not get out of his car near the place where the police arrested him.

The defense put on several witnesses that corroborated the statements defendants had given to the police officer concerning their presence in the Establishment tavern. Brummell did not testify but Harness did. In explaining his activities in a yard near the robbed tavern while they were under surveillance by the police, he said that he and Brummell got out of the car and went into the yard to relieve themselves shortly before their arrest. This occurred, he stated, after he and Brummell had left Precup's apartment and were riding around in Brummell's

car. The remainder of his testimony essentially was the same as the officer had testified.

Harness' testimony and the testimony of the officer concerning Harness' statement to him following the arrest were basically consistent with the officer's testimony concerning what Brummell had said. That is, both Harness and Brummell contended that they were at the Establishment tavern that night until about closing time, which was 1 a.m. Thus, Harness' testimony, the statement he gave the officer, and Brummell's statement to the officer all agreed that these two defendants were at the Establishment tavern during the time of the robbery in the other tavern, which was fixed at between 12:20 and 12:30 a.m. This alibi was supported by other patrons of the Establishment in their testimony.

There were several inconsistencies in the statements of the two defendants concerning their activities after they left the tavern. The prosecutor, in cross-examining Harness, pointed out these inconsistencies. While questioning him about going into the yard to relieve himself, the prosecutor asked him, "If Mr. Brummell said you weren't in the yard he wouldn't be telling the truth, would he?" Harness answered "No." Later, after Harness had stated to the prosecutor that he and Brummell were at Precup's apartment, the prosecutor asked: "You heard testimony *** that Brummell told the police officer that he had never been to Precup's apartment that evening? *** That was untrue, wasn't it?" Harness answered "Yes." The prosecutor then asked: "And you also heard in that testimony that he said you drove around in the bottoms that night?" Harness answered "Yes." The prosecutor asked: "I guess that was a lie, too, wasn't it?" Harness answered "Yes."

Counsel for both defendants now contend that by virtue of the conflicting statements and particularly the answers of Harness to the cross-examination by the

prosecutor, the positions of the two defendants were so antagonistic that the ability of one attorney to effectively represent both was impaired and that each defendant should have had separate counsel representing him. We would agree that had counsel or either of the defendants, before trial, called the court's attention to the possible antagonistic or conflicting positions of the two defendants and requested that separate counsel be appointed, under *Holloway v. Arkansas, Glasser v. United States,* and *People v. Bopp,* the court should have appointed separate counsel or at least should have conducted a hearing as to the effect of the alleged conflict. But here the possible conflict was never called to the court's attention.

Harness argues that when it became apparent to the court during the trial that the statements of the two defendants were not consistent the court should have *sua sponte* ordered a mistrial and severed the trial of the two defendants. We believe that if the court would have declared a mistrial or severed the cases and declared a mistrial as to one defendant only, without a motion requesting that result, some serious double jeopardy questions would have been created. See *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547; Parker, *United States v. Walden: Double Jeopardy And The Mistrial,* 34 U. Pitt. L. Rev. 714 (1973); Note, *Double Jeopardy: Mistrial Declared Without The Consent Of Defendant As A Bar To Reprosecution,* 33 Md. L. Rev. 211 (1973).

The appellate court opinion states that these two defendants urged in that court that it consider the denial of effective assistance of counsel under our Rule 615 (58 Ill. 2d R. 615), contending that representation of both defendants in this case constituted "plain error." The appellate court concluded that there was no showing of plain error so as to require reversal.

In this court the State points out that at no time

before or during the trial of this case did the defendants move for a severance. The State also points out that the question of denial of effective assistance of counsel was first raised in the appellate court and that at no time did either of the defendants raise this issue in the trial court.

Not only were the possible conflicting or antagonistic positions of the two defendants never called to the trial court's attention, or separate counsel requested, but also no reference was made to the denial of effective assistance of counsel in the written motion for a new trial. The record contains a transcript of the argument of the motion for a new trial and no suggestion that the defendants were denied the effective assistance of counsel was made orally during the argument. Thus, as the State has pointed out in its brief, this alleged error was never raised in the trial court.

Section 116–1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 116–1) provides that the motion for a new trial shall be in writing and shall specify the grounds therefor. The general rule is that the failure by a defendant to raise an issue in the written motion constitutes a waiver and the issue cannot be urged as a ground for reversal on review. This waiver rule applies to constitutional as well as to other issues. *People v. Pickett* (1973), 54 Ill. 2d 280.

Our Rule 615(a) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (58 Ill. 2d R. 615(a).) This court held in *Pickett* that this rule does not mandate that a reviewing court consider all errors involving substantial rights whether or not the same have been brought to the attention of the trial court. In other words, Rule 615(a) does not operate in the nature of a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court. As noted in

*Pickett,* the rule has been designed as a means of meliorating the harshness of the strict application of the general waiver rule.

Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed. We are not prepared to say that the trial court in this case committed error by not *sua sponte* interrupting the trial and taking whatever action would have been appropriate to preserve the defendants' constitutional right to counsel. It would have been entirely reasonable for a trial judge to assume that it was part of the defense's strategy to permit the police officer to testify as to the statements made by the two defendants. The interruption of this strategy may have, in itself, constituted error.

The defendants' statements were neither confessions nor admissions and would not have ordinarily been admissible as evidence; however, defense cousel made no objection to the officer's testimony concerning them. In spite of their inconsistencies, both statements were consistent in establishing an alibi for both defendants, placing them in a tavern quite a distance from the one that was robbed at the time the robbery occurred, and each statement was supportive of the other in that respect. At that point in the trial the trial judge and possibly defense counsel did not know whether the defendants or either of them would testify. The officer's testimony as to these statements afforded the defense a means of conveying to the jury the story which each defendant had told the police soon after his arrest. Furthermore, the defense counsel had copies of these statements and presumably knew their contents. When the defendants put on their case in chief, they presented evidence from other patrons of the Establishment tavern which supported the alibi statements both defendants had made to the police. If the

defense counsel would have objected to the officer's testimony, thereby preventing him from testifying as to the post-arrest statements of defendants, the inconsistencies would never have surfaced; however, the defendants would have been denied the benefit of having the jury know that they had both told the police shortly after they were arrested that they were in the Establishment tavern at the time of the robbery.

For us now to say that the judge's conduct constituted plain error would require us to reject this very plausible explanation for the manner in which defense counsel permitted the trial to develop. Even if we were to consider that the judge should have interrupted the trial and taken the appropriate action had these other possibilities not been present, inasmuch as they were present in this case, we cannot say that the judge's failure to act was plainly erroneous. Paraphrasing Mr. Justice Frankfurter, the perspective of the living trial may very well be lost in the search for error in a dead record. *Glasser v. United States* (1942), 315 U.S. 60, 88, 86 L. Ed. 680, 708, 62 S. Ct. 457, 473 (Frankfurter, J., dissenting).

It would seem that if defense counsel, after the trial had been completed, would have thought that his representation of the defendants had been limited or impaired by the inconsistencies in the statements and the advantage taken of them, he would have raised the issue in the motion for a new trial (*People v. Pickett*). And were we to assume that defense counsel who tried the case did not raise the issue for some personal reason, we cannot overlook the fact that an additional attorney was permitted to enter the case and participated in the preparation of the motion for a new trial and argued the motion to the court. He, too, made no reference to the question of effective assistance of counsel.

Although the appellate court reviewed the authorities on the primary issue, it concluded there was no showing of

such plain error as to require reversal. We do not reach the primary issue because we find that the issue was not raised by the defendants during the trial and was not called to the court's attention in the motion for a new trial. Under the well-established law of this State, the question has been waived and cannot be raised for the first time on review. Since, as we concluded above, it does not plainly appear from the record that the trial judge committed an error affecting the substantial rights of the defendants, the waiver rule precludes us from considering the question.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*