THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MIGUEL BAEZ NEGRON, Defendant-Appellant.

First District (4th Division)   No. 78-4

Opinion filed September 27, 1979.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F. Cernius, and Terry Gillespie, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Miguel Baez Negron, was charged in a multi-count indictment with murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1) and armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). At the conclusion of a jury trial in the circuit court of Cook County, defendant was found guilty of both murder and robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1). He was sentenced to a term of 20 to 40 years for murder and to a term of 4 to 12 years for robbery, the sentences to run concurrently.

On appeal, defendant contends: (1) he was denied his statutory right to a speedy trial (Ill. Rev. Stat. 1975, ch. 38, par. 103—5); (2) the trial court erred, in the hearing on the State's motion for a continuance, when it denied him access to an investigator's file; (3) the trial court erred in not submitting instructions to the jury defining: (a) justifiable use of force in defense of another (Ill. Rev. Stat. 1975, ch. 38, par. 7—1); and (b) the State's burden of proof on the defense of justifiable use of force (Ill. Rev.

Stat. 1975, ch. 38, pars. 7—1, 7—14, 3—2(b)); and (4) the prosecutor's prejudicial comments during closing argument denied him a fair trial.

We affirm the trial court.

Manuel Hernandez worked in a laundromat at 937 N. Kedzie Avenue, in Chicago, Illinois. On October 31, 1974, at approximately 11:10 p.m., Chicago Police Officer Richard Costanzo found Hernandez sitting on the laundromat's front window sill, bleeding from the face and shoulder. Officer Costanzo transported Hernandez to St. Anne's Hospital where Hernandez died from "blunt trauma to the head, chest and abdomen." Hernandez was also found to have a superficial gun shot wound in his right shoulder.

Juanita Lopez testified that on October 31, 1974, she and Sonja Ramos each had two shots of whiskey at the New Spot Lounge. As they left the lounge and began walking north on Kedzie, they heard a loud noise which "sounded like a shot." Ms. Lopez saw the defendant standing in front of the laundromat and asked him what was happening. The defendant told Ms. Lopez that he and another man had done something wrong and she should "hurry up and run" if she didn't want to get involved.

Ms. Lopez and Ms. Ramos ran to their home at 3223 W. Crystal. Shortly after arriving there, the two girls encountered the defendant and Santos Cancel on the back porch. The defendant was recounting how he had "kicked [Hernandez's] ass very bad." While the defendant was talking, Cancel toyed with a gun the two men had taken from Hernandez. Cancel handed the defendant some money and told him to count it and split it two ways.

Sonja Ramos, the mother of defendant's fiancee, took the stand and substantially corroborated the testimony of Ms. Lopez.

During their initial investigation into the murder of Hernandez, Chicago Police homicide investigators talked with both Ms. Lopez and Ms. Ramos. On November 2, 1974, these investigators informed Rachel Velez, the defendant's sister, that they were looking for the defendant. Later that day, the defendant surrendered himself to the police.

After being advised of his Miranda rights by homicide investigator Ben Bober, the defendant gave an oral statement concerning the incident. The defendant stated that on the evening of October 31, 1974, he and Santos Cancel were walking around the neighborhood, "in search of some money." They spotted Hernandez sitting alone in a laundromat. They asked Hernandez for a dollar but he said he didn't have any money. The defendant and Cancel then wrestled Hernandez to the ground and took $5 out of his pocket. During this struggle, the defendant kicked Hernandez once in the head and three times in the area of the stomach and chest. After they had obtained the money, the defendant heard a shot, although

he did not see anyone with a gun. Defendant fled the laundromat and ran into Ms. Ramos. While the defendant told Investigator Bober that he had met Cancel only two weeks prior to the incident, defendant later testified that he had known Cancel all his life.

The defendant was interviewed later that same day by assistant State's Attorney, Steven Brodhay, and he repeated the story which he had related to Investigator Bober.

The defendant took the stand and testified that on the evening of October 31, 1974, he, Santos Cancel, Juanita Lopez, Miriam Ramos (defendant's fiancee), and Sonja Ramos (Miriam's mother) walked to a liquor store where Ms. Lopez purchased a pint of Vodka and three quarts of beer. They then returned to Sonja Ramos' home at 3223 Crystal where they drank and talked.

Subsequently, this group left Ms. Ramos' home and walked to another nearby tavern. After the defendant bought a quart of beer, the group walked down Kedzie Avenue to the laundromat.

As the defendant was sitting on a table in the laundromat drinking his beer, he heard a commotion in the rear of the store. Defendant turned and saw Cancel and Hernandez locked in a struggle. The defendant intervened and with his fist, struck Hernandez two or three times in the face. Defendant denied kicking Hernandez. When Cancel and Hernandez fell to the floor, a shot rang out. Defendant then fled the scene.

The defendant testified further that he and Cancel had never planned to rob anyone. He denied taking any money from Hernandez or splitting any money with Cancel on the back porch of Ms. Ramos' home. The defendant also denied telling either Ms. Lopez or Ms. Ramos to "hurry up and run," because he and Cancel had "just did something bad."

On cross-examination, the defendant admitted that the first time he had told anyone the story he related on direct examination was just before the start of trial, almost two years after the incident in the laundromat.

Following the presentation of all the evidence, and after having heard closing arguments, the jury deliberated and found the defendant guilty of murder and robbery. The trial court sentenced the defendant to a term of 20 to 40 years for murder and to a term of 4 to 12 years for robbery, the sentences to run concurrently. Defendant appeals.

OPINION

I

Initially defendant contends he was denied his statutory right to a speedy trial (Ill. Rev. Stat. 1975, ch. 38, par. 103—5) when the State was granted a 60-day continuance, beyond the 120-day term, to locate missing witnesses.

■■ An accused held in custody by the State must ordinarily be tried

"within 120 days from the date he was taken into custody." (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a).) This statutory period may be extended for an additional 60 days if: (1) the State, despite the exercise of due diligence, has been unable to locate evidence material to the case; and (2) there are reasonable grounds to believe this evidence *may* be obtained at a later date. (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(c).) Whether such a continuance should be granted necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter which lies within the sound discretion of the trial judge. *People v. Morgan* (1978), 62 Ill. App. 3d 279, 378 N.E.2d 1298; see Ill. Rev. Stat. 1975, ch. 38, par. 114—4(e).

The State requested an extension of time beyond the 120-day term in order to locate two material witnesses, Juanita Lopez and Sonja Ramos. On May 21, 1976, a hearing was held on this request and the following evidence was adduced.

On May 1, 1976, approximately 3½ weeks before the running of the 120-day term, Ralph Dixon, a Cook County sheriff's investigator, was assigned by the State's Attorney's office to subpoena the two witnesses in order to have them available to testify at trial. Later that same day, Dixon proceeded to 3223 West Crystal, the last known address of both witnesses, in an attempt to serve each of them with a subpoena. The building located at that address, however, was abandoned and unoccupied.

Dixon testified that between May 1 and May 10 he contacted the Public Aid office, Illinois Bell Telephone, the gas company, and Commonwealth Edison in an unsuccessful attempt to obtain the current address of the two witnesses. Dixon also contacted the Post Office, but his inquiries had yet to be answered.

Dixon testified further that he obtained the telephone number of Chicago Police Officer Walter Siemieniak who was assigned to the area surrounding the last place of residence of the two witnesses. Siemieniak told Dixon he believed the two witnesses were still residing in that area. Dixon enlisted Siemieniak's aid in searching for them. Between May 10 and May 17, Dixon returned to the neighborhood several times. He talked to various persons on the street, all in an attempt to locate the whereabouts of the witnesses. Dixon stated that with further investigation he felt he would be able to locate them.

The foregoing testimony demonstrates that the State exercised the requisite due diligence in attempting to locate the two material witnesses. (*People v. DeVore* (1978), 62 Ill. App. 3d 412, 378 N.E.2d 1302; *People v. Harris* (1979), 70 Ill. App. 3d 363, 387 N.E.2d 1109.) Furthermore, in view of Officer Siemieniak's statement that these witnesses probably continued to reside in the area near their last known address, and considering the

fact that Dixon's inquiries to the Post Office had not yet been answered, there were reasonable grounds to believe the State *might* be able to locate the witnesses at a later date. (*People v. DeVore* (1978), 62 Ill. App. 3d 412, 378 N.E.2d 1302; *People v. Elliott* (1979), 68 Ill. App. 3d 873, 386 N.E.2d 579; *People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) Consequently, we conclude the trial court did not abuse its discretion in granting the State's motion for a 60-day continuance. The defendant was not denied his statutory right to a speedy trial.

## II

■■ Defendant next contends that error occurred when, during the course of the hearing on the State's motion for a continuance, the trial court denied him access to Investigator Dixon's file. This issue was not specifically raised in defendant's post-trial motion (Ill. Rev. Stat. 1975, ch. 38, par. 116—1) and therefore, we consider it to have been waived. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.

## III

■■ Assistant State's Attorney Steven Brodhay testified concerning an oral statement given by the defendant before trial. On redirect examination, the prosecutor asked Mr. Brodhay the following question:

"Q. Mr. Brodhay, as an assistant State's attorney, you take an oath to uphold the Constitution of the United States and the State Constitution?

[DEFENSE COUNSEL]: Judge, I object * * *

THE COURT: Objection sustained.

* * *

[DEFENSE COUNSEL]: Move that [it] be stricken.

THE COURT: It will be stricken and the jury will be advised to disregard."

We agree with the defendant's contention that the asking of this question was improper. However, we find that the asking of the question resulted in harmless error in light of defense counsel's prompt and timely objection which was sustained by the trial court, and in view of the trial court's admonition to the jury to disregard the question. See *People v. Hampton* (1977), 46 Ill. App. 3d 455, 360 N.E.2d 1333; *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025.

## IV

Defendant asserts that the State's ensuing cross-examination of him constituted prejudicial and reversible error:

"Q. * * * Did you say to Juanita Lopez to hurry up and run, 'we just did something wrong?'

A. No, sir.

* * *

Q. And when she testified to that, that was not true, is that what you are saying?

A. Yes, sir.

* * *

Q. And you heard [Sonja Ramos] testify that outside of the laundromat you had said, 'Hurry up and run, we just did something wrong.'

A. Yes, sir.

Q. And when she testified to that, that was not true, is that your testimony?

A. Yes sir.

* * *

Q. You heard Sonja Ramos * * * testify that at her apartment you said, 'We had kicked the man in laundromat in the back, chest and head,' * * * is that right?

A. Yes, sir.

* * *

Q. When she testified to that, you are saying that's not true?

A. Yes, sir.

* * *

Q. And [Juanita Lopez] testified that you said * * *, 'We really kicked his ass very bad,' * * *?

A. Yes, sir.

Q. And * * * when [Ms. Lopez] said that it was not true?

A. Yes, sir.

Q. You saw Mr. Brodhay take the witness stand, * * * right?

A. Yes, sir.

* * *

Q. And he was making all of that up, is that your testimony?

[DEFENSE COUNSEL]: Judge, I object to that.

THE COURT: The objection will be sustained, and counsel's remarks will be disregarded by the jury.

* * *

Q. Did you tell Investigator Bober that you and Mr. Santos Cancel grabbed the man?

* * *

A. No, sir.

Q. And did you hear Investigator Bober testify to that?

A. Yes, sir.

Q. And you are saying that when he testified to that it was not true?

A. Yes, sir.

* * *

Q. * * * You never counted out the money * * *?
A. No, sir.
Q. And when Sonja Ramos and Juanita Lopez testified that you told him that you divided the money from the robbery, that was not true?
[DEFENSE COUNSEL]: Judge, I object.
THE COURT: The objection is overruled.
THE WITNESS: No, sir."

■■ It is apparent that the defendant waived any error with regard to the vast majority of these questions by failing to object to the questions at trial. *People v. Adams* (1968), 41 Ill. 2d 98, 242 N.E.2d 167; *People v. Higgins* (1979), 71 Ill. App. 3d 912, 390 N.E.2d 340.

■■ However, aside from the concept of waiver, we note that the State's line of questioning was improper in that it forced the defendant to judge the veracity of the witnesses against him, a function properly reserved for the trier of fact. (*People v. Mikel* (1979), 73 Ill. App. 3d 16, 391 N.E.2d 550; *People v. Hill* (1978), 58 Ill. App. 3d 822, 374 N.E.2d 1020.) Nevertheless, in view of the overwhelming evidence of defendant's guilt, the error was harmless and does not warrant reversal of defendant's conviction. *People v. White* (1977), 52 Ill. App. 3d 517, 521-22, 367 N.E.2d 727, 731-32.

## V

Defendant next contends the trial court erred in not submitting instructions to the jury defining: (1) justifiable use of force in defense of another (Ill. Rev. Stat. 1975, ch. 38, par. 7—1); and (2) the State's burden of proof on that defense (Ill. Rev. Stat. 1977, ch. 38, par. 7—1, 7—14, 3—2(b)).

The concept of justifiable use of force may act as either a complete defense to the charge of murder (Ill. Rev. Stat. 1975, ch. 38, par. 7—1), or as a defense reducing murder to voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)). See *People v. Johnson* (1971), 1 Ill. App. 3d 433, 435, 274 N.E.2d 168, 170.

Defendant admits the foregoing instructions were not tendered by him and that this issue was not raised in his written post-trial motion (Ill. Rev. Stat. 1975, ch. 38, par. 116—1; *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227) (generally an issue not preserved in a defendant's written post-trial motion is considered waived for purposes of appeal). Nevertheless, defendant maintains: (1) the trial court had a duty to give these instructions to the jury *sua sponte* (see Ill. Rev. Stat. 1975, ch. 110A, par. 451(b)); and (2) its failure to do so constitutes plain error (Ill. Rev.

Stat. 1975, ch. 110A, par. 615(a); Ill. Rev. Stat. 1975, ch. 110A, par. 451(b)).

■■ The burden of preparing jury instructions, in criminal as well as in civil cases, rests "primarily on the parties, not on the trial court." (*People v. Grant* (1978), 71 Ill. 2d 551, 557, 377 N.E.2d 4, 7.) The trial judge, as a general rule, is under no obligation to give instructions to the jury which are not requested or tendered by defense counsel. *People v. Springs* (1972), 51 Ill. 2d 418, 283 N.E.2d 225; *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; Ill. Rev. Stat. 1975, ch. 110, par. 67(3).

■■ Even if we assume, without deciding, that the trial court did err in failing to instruct the jury, *sua sponte*, on the concept of justifiable use of force in defense of another, this error was harmless. Defendant was charged with murder *and* robbery. And both the defendant and the State have failed to recognize the significance of the jury's guilty verdict on the robbery charge. By finding the defendant guilty of robbery, the jury effectively precluded any possibility that defendant's use of force with (and murder of) the victim was justified.[1] Consequently, even if the trial court did err in not instructing the jury on the concept of justifiable use of force, this error could not have deprived the defendant of a fair trial. *People v. Truelock* (1966), 35 Ill. 2d 189, 220 N.E.2d 187.[2]

## VI

Finally, defendant contends the prosecutor made several prejudicial comments during closing argument. Defendant, however, failed to object to these comments at trial (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622; *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227); and failed to raise this issue in his written post-trial motion (Ill. Rev. Stat. 1975, ch. 38, par. 116—1; *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227). In any event, we have examined the allegedly improper comments made by the prosecutor and find that they did not constitute a material factor in defendant's conviction. *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.

Accordingly, for the reasons stated we affirm the defendant's convictions.

Affirmed.

JOHNSON and ROMITI, JJ., concur.

---

[1] It is the victim, rather than the robber, who is justified in using deadly force. Ill. Rev. Stat. 1975, ch. 38, pars. 7—1, 2—8.

[2] The lines of authority cited by both the defendant and the State (see *People v. Tiller* (1978), 61 Ill. App. 3d 785, 378 N.E.2d 282 and cases cited therein; *People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293 and cases cited therein; *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532) are distinguishable and have no application to the instructional issue presented by this case.