THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE PATRICK McCRACKEN, Defendant-Appellant.

First District (5th Division)   No. 87—0994

Opinion filed February 17, 1989.

John Thomas Moran, of Law Offices of John Thomas Moran, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Lynda A. Peters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COCCIA delivered the opinion of the court:

The defendant Dale Patrick McCracken was tried by the court without a jury. He was convicted of leaving the scene of an accident involving personal injuries, in violation of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—401(a)). We are of the opinion that there was sufficient evidence admitted below to support Mc-Cracken's conviction, and accordingly, affirm the trial court's judgment.

McCracken was charged by complaint with the offenses of leaving the scene of an accident involving personal injuries and failure to yield the right-of-way to a pedestrian. A third charge of drunken driving was dropped prior to trial. Trial was held on September 12, 1986, and September 15, 1986. Immediately prior to trial, however, the judge realized that he personally, and currently, was being represented by an attorney who was associated with defense counsel's law firm. The judge disclosed this fact in open court. He offered to recuse himself to the prosecution, who declined his offer. Although defendant McCracken's attorney was present, he did not ask for recusal of the judge or object to the offer made by the judge to the assistant State's Attorney.

The trial commenced with Susan Cipich, the complaining witness, testifying that on or about 9:30 p.m. on the evening of December 3, 1985, she left Loop College in the company of her math instructor, Paul Reichel. Reichel walked Cipich to her car, which was parked along Upper Wacker Drive, and she, in turn, drove him to his car, which was parked along Lower Wacker Drive, in what is known as a service or access lane. Cipich parked next to Reichel's car. They remained in her car, talking for approximately 30 to 45 minutes. She then exited her car on the driver's side, in order to retrieve Reichel's briefcase from her trunk. While standing near the trunk of her car, she was struck by McCracken's car, sustaining serious injuries to her legs. As a result of impact, she was thrown under a nearby car. During this experience she heard the sound of screeching tires and a car pulling away.

Paul Reichel testified that as Cipich exited her car on the driver's side, he got out of the passenger's side. It was then that he heard the sound of tires screeching, looked and saw a car coming towards them at a high rate of speed, out of control, and swerving down the service lane. The approaching car, driven by McCracken, hit the rear bumper of Reichel's car, which was parked immediately west of Cipich's car, and then struck Cipich, pinning her legs against her car. McCracken's car did not stop after striking Cipich; instead, it raced off down the service lane.

Officer Lawrence Dolehide of the Chicago police department testified that at approximately 11 p.m. on the night of December 3, 1985, he was on his way back to his office, still in uniform, and driving his own vehicle eastbound along Lower Wacker Drive. As he did so he observed an eastbound, late model Pontiac in the main lanes of Lower Wacker Drive, three or four car lengths in front of him. As he approached Garvey Court, the Pontiac made an abrupt right turn

and then an abrupt left turn into the eastbound service lanes. Officer Dolehide continued in the regular lanes, which run parallel to the service lanes. There was room for a car to drive through the service lane area without striking parked cars. He believed that the posted speed limit was 15 miles per hour at this point for local service lane traffic. However, the Pontiac, while in the service lane, accelerated to 30 miles per hour, drove through a large puddle of water, lost control, and began fishtailing. The Pontiac then struck a pedestrian (Cipich), slid and then came to a stop at an angle, about 30 feet from the site of the collision. Someone in the backseat of the Pontiac turned around to observe the scene. One or two seconds after stopping, the Pontiac made a left turn, drove over a concrete abutment, and came out in front of Officer Dolehide's eastbound car. The Pontiac then "took off." There were no other cars or pedestrians in the vicinity. Officer Dolehide pursued the Pontiac, flashing his headlights, sounding his horn, and accelerating to 30 or 35 miles per hour in an effort to catch up to the Pontiac. The Pontiac stopped around lower Michigan Avenue, approximately 2 or 2½ blocks east of the point of collision. Officer Dolehide informed the driver (McCracken) that he had struck a pedestrian and ordered him back to the scene of the accident. Officer Dolehide followed the driver back to the scene.

Officer Russell Ryan of the Chicago police department testified that about 10:45 p.m. on the date in question he was assigned to investigate an accident with injuries. Officer Ryan placed McCracken under arrest. The prosecution rested its case in chief after Officer Ryan's testimony, and McCracken moved for a directed finding of not guilty on both charges. The trial judge denied the motion.

Alice Markovic testified for the defense. She and McCracken worked for the same employer. She and Patricia True arrived at the Marquette Inn after work at about 5:30 p.m. on the night in question, where she consumed two glasses of wine. McCracken joined them around 6:30 p.m. McCracken, Markovic, and True left the Marquette Inn about 7 p.m., in order to look at the Christmas tree in Daley Plaza and the window displays along State Street. At approximately 8:30 p.m., they went to the City Tavern, where Markovic had coffee, McCracken had a beer, and True had a glass of wine. They departed about 9:15 p.m. and proceeded to 101 North Wacker Drive. McCracken's company car was parked in the basement of that building, and he offered to drive the women home. They reached McCracken's car around 9:45 p.m. Markovic sat in the backseat, McCracken drove, and True was in the front passenger seat. They proceeded north and then east along Lower Wacker Drive. After en-

tering the access or service lane, they came upon an icy spot or puddle, struck something, spun around, and went over the median strip into the express lane. Markovic did not see a pedestrian. Once McCracken regained control of his car, he continued east to a point where he could turn around and come back to the site. There was no opportunity to turn around for at least 1 or 1½ blocks from the point of impact. Markovic was aware that there had been a collision with some object. She testified that McCracken did not stop before proceeding over the abutment. When the police officer caught up with them, McCracken had his turn signal on in order to come back west to the point of contact. There was no other reasonable place to turn around or stop the vehicle.

On cross-examination, Markovic admitted that there were no moving cars in front of them on the service road. Markovic denied that she and True were laughing when they spoke with Officer Ryan upon returning to the scene of the accident. McCracken's counsel did not object to the prosecution's question that elicited Markovic's denial of laughter. In response to a question by the trial judge, Markovic conceded that at all relevant times of this incident traffic was light.

Patricia True testified that on and prior to this date she worked with Markovic and McCracken. True had wine at the Marquette Inn and McCracken had a beer. At the City Tavern, she had a glass of wine that she did not finish, and McCracken had a beer that he did not finish. When they were in his car heading east on Lower Wacker Drive, she was turned around, facing the backseat, and talking with Markovic. The car hit a bump and began to slide, they hit something, and the car went over the median. At the time of collision True did not know that they had hit a human being. After crossing the median strip, they were discussing the fact that they hit something and were trying to figure out where to turn around. They travelled one-half block before meeting up with the police officer. They were already stopped at the next light waiting to turn left in order to return to the scene of the accident.

On cross-examination, True testified that she did not recall how much wine she had consumed at the Marquette Inn. She did not see what McCracken struck with his car, although she knew that he did strike something. It sounded as if they had struck a trash container. True denied that she was laughing when they returned to the accident site. Again, McCracken's attorney did not object to the prosecution's question that prompted True's denial.

McCracken testified that he had two beers at the Marquette Inn.

He had another beer at the City Tavern, after looking at the Christmas displays. He, Markovic, and True then picked up his car and entered Lower Wacker Drive. McCracken turned into the access lane or service lane of eastbound Lower Wacker Drive after passing Post Place. While in the process of accelerating, he hit some ice and a large hole, started skidding and fishtailing, and struck something. He jumped the barrier and came close to hitting the columns separating the eastbound and westbound express lanes. After jumping the abutment, McCracken hit his head on the roof of the car. While he was in the process of straightening his car out and stopping, someone said that they thought he had hit a dumpster. He was dazed and confused. He did not see a person in the service lane prior to the collision, and he did not realize that he had struck someone. By the time he straightened out his car, he had gone a considerable distance. He passed Garvey Court, stopped at a red light, and put on his left turn signal while in the left turn lane. He was not thinking too clearly. He heard a car horn, and True told him that a man with a badge had pulled up next to his car and was telling him to pull over. Before True was finished speaking, the light had changed and McCracken returned to the scene of the accident.

On cross-examination, McCracken stated that even though he had two full beers at the Marquette Inn, he did not finish his beer at the City Tavern. He again admitted to striking something with his car. The momentum from the impact carried his car over the abutment in one continuous motion. He could have turned left at the first intersection he passed before coming to the light, but he thought that turning at the light would bring him back to the accident site sooner. He was "out of it" after the collision. Upon returning to the scene, he told Officer Ryan that he hoped he had not hurt anyone.

The trial judge then questioned McCracken. Their exchange included the following:

"Q. My recollection and I don't intend to be an, to be an authority nor do I intend that I am an expert, you're eastbound another entrance out, I believe, it would be between Wabash and Michigan around Loop College area. Do you recall that area?

A. I think, that's Garvey Court.

Q. No, I think, that's not Garvey Court and I think a different exit, sir, but you may be right and I may be wrong."

McCracken's attorney did not object to the judge's questioning of his client. McCracken then told the judge that he was about a block or a block and one-half beyond the accident site when he came to a stop at

the traffic light. After redirect and re-cross testimony, the defense rested.

Officer Ryan testified, in the prosecution's rebuttal, that Markovic and True were weaving and staggering at the scene of the accident. He also detected a strong odor of alcohol on both women. Their eyes appeared to be glassy, they appeared to be intoxicated, and they appeared to be in a good frame of mind. On cross-examination, Officer Ryan admitted that he did not record these observations about the women in his police report. On redirect examination, he stated that recording such information was not within the scope of his duties as a police officer. On re-cross-examination, he conceded that the women filled out detailed accident reports.

After closing arguments, the trial judge made the following findings. Concerning McCracken's witnesses, the judge noted that there was testimony that they were staggering. He further noted:

"They were also conducting themselves, in lack of a better term, promiscuous fashion at the accident scene. Those matters of course, do go to the credibility of the testimony of the witnesses."

Counsel for McCracken did not object to the judge's remarks at any time during the trial. Although the judge found that the sobriety of the defendant was not an issue, he also stated:

"The Court agrees with the defendant who testified, that he's a little bit out of it. I think, he indicated that he was a little out from his head striking the roof. The Court is of the opinion he was a little bit out of it before his head struck the roof."

Again, McCracken's attorney never objected to the judge's comments.

Finally, the judge went on to state that he had taken the opportunity to check the Chicago street guides, in order to clear up confusion as to the location of various exits along Lower Wacker Drive. Yet again, McCracken's counsel did not object to this conduct on the part of the judge. After noting that Officer Dolehide and McCracken had testified that the latter ultimately stopped around Michigan Avenue, the judge concluded:

"The Court finds that too far from the scene of the accident to convince the Court that the defendant was truly intent upon immediately returning ***."

Accordingly, the judge found McCracken guilty of leaving the scene of an accident which involved personal injuries, but found him not guilty of the charge of failing to yield the right-of-way to a pedes-

trian. The judge then ordered a presentencing investigation.

On February 23, 1987, the trial judge heard arguments on McCracken's motion for a new trial. McCracken's counsel asked the judge to look at some street guides in order to see how far his client travelled. He admitted that if the judge was confused about where the accident occurred, it was because of his client's testimony. The trial judge stated that Officer Dolehide testified with a great deal of credibility and that he was the only disinterested witness. The judge further noted that McCracken travelled 2 or 2½ blocks after the collision, and stated:

> "It seems to me that he could have stopped at some point sooner than he stopped ***. And even if that is only 1500 feet, it would seem to me at that hour there were ample opportunities to stop elsewhere and walk back—to back up, to park his car, to take any number of actions other than to pull away."

The judge denied McCracken's motion and then sentenced him to one year of conditional discharge, with 10 weekends in the House of Corrections.

McCracken now argues that he was not proven guilty beyond a reasonable doubt. He has also raised three other issues for our consideration.

First, McCracken contends that the trial judge should have recused himself from the sentencing hearing, because his impartiality might reasonably be questioned. Second, McCracken asserts that the prosecution committed reversible error by asking Markovic and True whether they were laughing when they returned to the scene of the accident, since such questions influenced the judge's assessment of their credibility. Third, McCracken claims that the trial judge erred by conducting private investigations, when he asked McCracken about the exits on Lower Wacker Drive, when he consulted Chicago street guides, and when he opined that McCracken was "out of it" before the latter hit his head after the collision. None of these alleged errors were brought to the attention of the judge through objections. Equally fatal is the fact that the alleged errors were not specified in McCracken's motion for a new trial.

■ It is settled that in order to preserve an issue for appellate review, the defendant must object at trial and raise the alleged error in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-30.) And the defendant must specify the errors in the post-trial motion (see Ill. Rev. Stat. 1987, ch. 38, par. 116—1(c)); otherwise, the issue is waived. The failure to raise issues

before the trial court casts an unnecessary burden upon appellate counsel and the appellate court. *People v. Caballero* (1984), 102 Ill. 2d 23, 31-32, 464 N.E.2d 223, 227.

If the defendant fails to object to the alleged error at trial, and fails to preserve the issue in a post-trial motion, a court of review will only address the issue if it rises to the level of plain error. (See 107 Ill. 2d R. 615(a).) But this rule is not a general saving clause, preserving for review all errors affecting substantial rights whether or not they have been brought to the trial court's attention. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227, 231.) Thus, the plain error doctrine is a limited exception to the waiver rule. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577-78, 404 N.E.2d 233, 239.) The doctrine applies only when the evidence is closely balanced, in order to insure that the defendant has not been the victim of a serious injustice. (*Carlson*, 79 Ill. 2d at 576, 404 N.E.2d at 238.) Otherwise stated, if the evidence is not close, the doctrine will not be applied. In our case, the evidence dealing with the material issues is not closely balanced, as is apparent from the following review. The plain error doctrine, therefore, is inapplicable, and the alleged errors have not been preserved for appeal, and thus are not properly before us.

We now come to the only issue McCracken has not waived: whether he was proven guilty beyond a reasonable doubt. As noted above, the defendant was charged with violating section 11—401 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—401(a)), which provides:

> "The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11—403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary."

The prosecution was not required to show that McCracken knew that he had injured Cipich; rather, it was only required to prove that he knew that his car was involved in a collision. See *People v. Nunn* (1979), 77 Ill. 2d 243, 252, 396 N.E.2d 27, 31; *People v. Martinez* (1983), 120 Ill. App. 3d 305, 311, 458 N.E.2d 104, 110.

In a bench trial, it is the trial court's province to determine the credibility and weight of the testimony, and to resolve the inconsistencies and conflicts therein. A reviewing court will not substitute

its judgment on such matters unless the proof is so unsatisfactory that a reasonable doubt of guilt appears. It must be remembered that the trial court, and not the reviewing court, was in a position to observe and evaluate the witnesses. (*People v. Berland* (1978), 74 Ill. 2d 286, 305-06, 385 N.E.2d 649, 658.) It is the function of the trier of fact to draw inferences from the evidence, and where such evidence merely conflicts, a reviewing court likewise will not substitute its judgment for that of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 734-35.

■■ McCracken argues that since the State's case is entirely circumstantial, his reasonable hypothesis of innocence should be adopted. This argument is meritless. Two eyewitnesses—Paul Reichel and Officer Dolehide—saw McCracken strike Cipich and then leave the scene of the accident. Furthermore, McCracken and his witnesses all admitted that they knew immediately that he collided with an object. The trial judge described Officer Dolehide as the only disinterested witness. Dolehide's testimony indicates that McCracken came to a brief stop after the accident, but that he left the scene immediately. Dolehide testified that he pursued McCracken 2 or 2½ blocks before catching up to him. Finally, Officer Dolehide observed that there was no traffic in the area on the date and time in question. McCracken's own witness, Markovic, conceded that traffic was light and that there was no traffic in front of them at all.

The trial judge concluded that McCracken could have stopped earlier. The evidence is not so unsatisfactory that a reasonable doubt of guilt exists. In fact, the evidence on the material issues is not even closely balanced. For all of the foregoing reasons, the judgment of the trial court is affirmed.

■■ Lastly, we grant the State's request to assess the sum of $75 against defendant as costs for this appeal. Ill. Rev. Stat. 1987, ch. 53, par. 8(a); *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319.

Affirmed.

MURRAY, P.J., and LORENZ, J., concur.