THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE GORDON, a/k/a Robert Powell, Defendant-Appellant.

First District (4th Division) ·No. 79-336

Opinion filed March 27, 1980.

Eugene Lieberman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Robert J. Kaiser, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Willie Gordon, otherwise called Robert Powell, was found guilty of attempt murder and aggravated battery. The trial court found that the aggravated battery merged into the attempt murder, entered judgment on the attempt murder, and sentenced the defendant to a term of six years. On appeal the defendant argues: (1) his conviction was improperly based upon an attempt felony murder theory which was not proved beyond a reasonable doubt; (2) he was denied a fair and impartial trial by the prosecutor's improper cross-examination; (3) the court erred in permitting the prosecutor to question him concerning his subsequent conviction; (4) he was denied a fair trial in that his counsel agreed to waive the transcription of the *voir dire* proceedings; (5) the court erred in impanelling a juror who had been convicted of a felony; (6) the court erred in instructing the jury that the State is not required to prove motive; (7) the trial court committed error in connection with the issue of his flight after indictment; and (8) he was prejudiced by various comments made by the prosecutor during closing and rebuttal argument.

Three witnesses testified before the jury. The People called the complaining witness and a police officer. The defendant testified on his own behalf.

The complaining witness testified that at the time of incident he was a full-time student at the Illinois Institute of Technology and employed part time as a cab driver. On September 8, 1975, at 2 a.m. he was driving his cab at 77th and Halsted Streets. He picked up two black males, one of

whom was the defendant. The victim was told to drive to 66th and Normal, where one of the men got out. He did not pay his fare, but said the defendant would do so. The defendant agreed and told the driver to go to 49th and Prairie. At 49th and Prairie there was a dark, bleak, desolate building. The driver told the defendant his fare. The defendant told the driver that the person he was meeting was not present and to drive to 47th Street and make a right turn.

The victim drove the cab to 47th and Prairie, a busy intersection. The defendant told the victim to park. As the victim was looking for a parking space, he was shot in the neck. He then turned around, saw a gun, and was shot in the nose. The victim stopped the cab and got out. There was a police car in front of him and another in back of him. The victim testified that he was not armed when he was shot by the defendant. Until this incident, the victim had never been robbed or threatened while working as a cab driver. None of his passengers had ever refused to pay a fare. The victim did not carry a tire iron, crowbar, knife, gun, or other weapon in the cab for protection.

On cross-examination the victim denied that the defendant had told him that he did not have enough money to pay the fare, or had asked to leave some of his belongings while he went inside for money. The victim also denied telling the defendant he was tired of being "stiffed" for fares and that he was going to make an example of the defendant. The victim denied that he had made a move with his right hand towards the floor of the car.

Although the victim had previously testified before the grand jury that the defendant had not asked for or demanded any money, he testified on cross-examination that he had indicated to the police that the defendant had attempted to rob him. The victim stated he assumed it was a robbery attempt because he had been shot. He denied having specifically told the police that the defendant had demanded any money.

The police officer testified that on September 8, 1975, between 2:30 and 2:45 a.m., he was driving in a marked police car in the vicinity of 47th and Prairie. He observed a cab eastbound on 47th Street driving in an erratic manner. The cab stopped at 410 E. 47th Street. The driver got out and said he had been shot. The driver was bleeding from his nose and neck. The defendant exited from the right rear door. The police officer patted the defendant down, found a revolver in his pocket and arrested him. The police officer testified that he searched the cab but did not find a gun, knife, bludgeon, tire iron, or anything "like a weapon." On cross-examination the police officer testified that the victim had difficulty speaking but that when asked if he had been robbed the victim nodded his head as if he had been.

The defendant testified that on September 8, 1975, he hailed a cab on

86th Street. The victim was driving. He told the driver to take him to 4950 Prairie. The driver then picked up a man on 80th and Halsted and dropped him off somewhere on Marquette. The man paid his portion of the fare. The defendant was driven to 4950 Prairie where he had lived for six months.

The defendant looked over at the meter and realized he did not have enough money to pay his fare. He told this to the driver and offered to leave his watch and his coat while he ran upstairs for money. The driver cursed him and said he ought to kill him to make an example of him. The driver then sped off in the cab with the defendant still in the back seat. The driver reached down and the defendant became frightened because on a previous occasion he had been shot and robbed. He saw the cab driver reach under the front seat and grab something. It looked like a pipe or a crowbar. The defendant shot the driver because he did not want the driver "to come up with anything" from under the seat. He was scared because it looked like he was going to be shot.

On cross-examination the defendant testified that the victim's hand was still under the seat when he shot him, that he did not see the victim bring anything up from under the seat, but that "you can see when somebody is grabbing something." The defendant testified he did not actually see a gun in the victim's hand but that he might have seen a gun in his mind. The defendant testified that in his mind he could see the victim pulling a trigger to kill him. The defendant subsequently testified that he did see "something" in the victim's hand and that it looked like a tire iron. The defendant could not remember if the previous incident in which he had been shot was in 1974 or 1975. Neither could he remember in what month he had been shot.

The police officer was called in rebuttal and testified that the defendant had told him he was living at 7248 South King Drive and did not mention the 4950 South Prairie address. The police officer testified that he searched through the defendant's pocket and although there were no weapon registration papers found, the defendant was not charged with unlawful use of a weapon.

■■ The defendant's first argument on appeal is that his conviction was improperly based upon a theory of attempt felony murder and that this theory was not proved beyond a reasonable doubt. This contention is unsupported by the record. The State did not rely upon a theory of attempt felony murder. Rather, the State endeavored to prove, as is required by law, that the defendant shot the victim with the specific intent to kill. The undisputed evidence was that the defendant shot the victim in the neck and the nose with a .32-caliber revolver at extremely close range. Where, as in the instant case, there is no evidence of any intent other than to kill, the fact of such a shooting is in and of itself sufficient to establish

beyond a reasonable doubt that the defendant shot the victim with the specific intent to kill. See *People v. Bingham* (1979), 75 Ill. App. 3d 418, 394 N.E.2d 430; *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641.

The defendant next contends that he was denied a fair and impartial trial by the prosecutor's improper cross-examination. The assistant State's Attorney asked the defendant whether he gave a statement to the police which contradicted his earlier testimony at trial regarding his employment at the time of his arrest. Defense counsel objected on collateral impeachment and discovery grounds. During argument on these objections the assistant State's Attorney stated that a police report containing the impeaching statement had been disclosed pursuant to discovery. The trial court sustained the defendant's objection on the collateral impeachment ground and the question which would have laid the foundation for impeachment was withdrawn. The prosecutor did not produce any evidence that the defendant had given the police employment information which contradicted the defendant's testimony at trial. The defendant now claims his credibility was improperly impeached since the insinuation that the defendant lied about his employment was never supported by any evidence.

■■ This argument is rejected. First, it was not raised in the defendant's motion for a new trial and is thus waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) Second, the question asked was not so obviously incompetent as to give rise to the conclusion that it was posed in bad faith or to prejudice the defendant. Therefore, the trial court's sustaining of the objection and the prosecutor's withdrawal of the question cured any error. *People v. Cook* (1976), 41 Ill. App. 3d 946, 354 N.E.2d 122.

■■ The defendant's third claim is that the court erred in permitting the prosecutor to question him concerning his conviction for unlawful use of a weapon. On cross-examination the defendant denied that he ever carried a gun following the incident which is the subject of this appeal. The People then cross-examined him regarding his arrest and conviction on an unlawful use of weapons charge which arose from a separate incident subsequent to the shooting of the cab driver. The defendant objected to the use of this conviction claiming it was improper impeachment of his general character. The trial court ruled:

"Our impeachment here is on a different reason. We are not answering any prior convictions as far as credibility of the witness. We have a direct impeachment here that involves a specific statement."

It is clear that the unlawful-use-of-weapons conviction was introduced for the purpose of impeaching a specific statement the

defendant made, that he did not carry a gun after his arrest based on the shooting of the cab driver, and not for the general impeachment of his credibility as a witness. Evidence of other illegal acts is admissible for such a purpose where it is expressly so received by the court. *People v. Dixon* (1961), 22 Ill. 2d 513, 177 N.E.2d 224.

The defendant contends that his conviction for unlawful use of a weapon does not impeach or contradict his testimony. He argues that one can be convicted of this offense for having a gun in one's car and that therefore, it is not necessary to actually "carry" a gun to be guilty. However, we believe the conviction does tend to discredit the defendant's denial of having "carried" a gun, whether the conviction was due to his having carried it on his person or in his car. Further, the defendant asserts this ground of error for the first time on appeal and thus has waived it for purposes of review. *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Miller* (1977), 55 Ill. App. 3d 136, 370 N.E.2d 639.

■ The defendant's fourth contention is that his right to a fair trial was violated in that his counsel agreed to waive transcription of the *voir dire* proceedings. However, there is "no existing law that requires the recording of *voir dire* examination. [Citation.] At the most, waiver of the recording of *voir dire* examination would constitute an error in judgment which would not amount to incompetent representation." *People v. Westbrook* (1972), 5 Ill. App. 3d 970, 975, 284 N.E.2d 695, 698.

The defendant mistakenly relies upon *People v. Sorensen* (1977), 49 Ill. App. 3d 984, 365 N.E.2d 171, in making this argument. The issue in *Sorensen* was whether a defendant's motion to vacate a plea of guilty under Supreme Court Rule 604(d) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(d)) was properly denied where the defendant did not receive a transcript of his plea proceedings prior to the hearing on his motion to vacate. The appellate court held that Rule 604(d) requires that an indigent defendant be provided the transcript of his plea without cost. Thus, the holding in *Sorensen* is not applicable to the issue before us: whether defendant's waiver of the transcription of *voir dire* denied him a right to a fair trial.

The defendant next contends that the court erred in impanelling a juror who had been convicted of a felony. In his appellate brief the defendant alleges that a certain juror was sworn in and after questioning revealed that he had been convicted of a felony and had served two years in prison. However, there is nothing in the record to establish that one of the jurors was a felon. As noted above, the defendant waived transcription of the *voir dire* proceedings. On appeal, the defendant did not provide the court with reconstruction of the proceeding pursuant to

Supreme Court Rules 323(c) and 612(c). Ill. Rev. Stat. 1977, ch. 110A, pars. 323(c), 612(c).

■■ Responsibility for proper presentation of the record of proceedings, including the *voir dire*, rests with the defendant-appellant. (*People v. Johnson* (1976), 43 Ill. App. 3d 649, 357 N.E.2d 151.) We cannot consider the defendant's contention without an adequate record. See *People v.* *Donald* (1977), 56 Ill. App. 3d 538, 371 N.E.2d 1101, where issues relating to *voir dire* were similarly held to be waived for failure to preserve the record.

The defendant next contends that it was error to instruct the jury that the State is not required to prove motive. He argues such an instruction should not be given where the People adduce evidence tending to prove a motive and argue the circumstances of the motive to the jury. In the instant case the defendant elicited testimony relative to a possible robbery motive in an effort to impeach the victim. The State's evidence relating to motive was elicited in order to rehabilitate the victim's testimony.

■■ The defendant failed to object to the motive instruction at trial and thus waived this argument for the purpose of appeal. As held by the supreme court in *People v. Underwood* (1978), 72 Ill. 2d 124, 130, 378 N.E.2d 513, 516:

> " 'Enlightened trial practice does not permit counsel under the guise of trial strategy to sit idly by and permit instructions to be given the jury without specific objections and then be given the advantage of predicating error thereon by urging the error for the first time in a post trial motion.' "

The defendant next makes three arguments relating to his failure to appear for trial for more than 13 months. At the close of the People's case the parties stipulated in part that the defendant failed to appear for trial for 13 months. The stipulation stated that the defendant finally appeared in July of 1977, when he was arrested on a bond forfeiture warrant resulting from his failure to appear the previous year.

During direct examination defense counsel began to elicit from defendant an explanation of the 13-month absence. The following colloquy occurred:

> "[Defense counsel]: And would you please explain to the court the reasons for your not appearing?
>
> [The defendant]: Because at that time me and the attorney I had he told me that—."

The prosecutor objected on hearsay grounds and the court sustained the objection.

■■ On appeal the defendant contends that his answer would have been

allowed under an exception to the hearsay rule and that therefore, the trial court should have overruled the objection. In order to preserve for review the question of whether evidence was improperly excluded an offer of proof as to what that testimony would be is necessary. (*People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623; *People v. Jones* (1970), 121 Ill. App. 2d 268, 257 N.E.2d 514.) In the instant case, after the trial court ruled that the defendant's conversation with his attorney would constitute hearsay, the defense made no attempt to show what statement of the attorney it sought to introduce, nor did the defense inform the court as to the purpose of introducing the statement into evidence. Absent a proper offer of proof the trial court properly excluded the statement.

The defendant also contends that the trial court erred in not giving a jury instruction "defining the effect of flight in connection with all the evidence." However, the defendant did not tender an instruction as to flight, did not object to the jury instructions on this ground, and did not raise the issue in his motion for a new trial. He therefore waived the issue for purposes of this appeal. *People v. Underwood.*

The defendant also contends that because there was no evidence of "hiding" it was error for the prosecutor to state in his closing argument "he split out of here for 13 months, does that mean anything to you; he hid out in the city for 13 months."

■■ While there was no direct testimony that the defendant had "hid," the stipulation entered into by the parties did state that the matter had been set for trial, that the defendant failed to appear for 13 months, and, that he appeared after being arrested on a bond forfeiture warrant. The comment was a fair inference from that evidence. Further, the People's argument was in rebuttal to the defendant's closing argument that he was "the kind of man who came to court three times when the case was set for trial and appeared on each of those times ready to stand trial." Finally, any error was cured in that the trial court, in response to the defendant's objection, told the jury to disregard the comment if it was not compatible with their memory of the evidence.

The defendant next argues a number of different comments made by the State during closing and rebuttal arguments each constituted reversible error. The comments made and the defendant's arguments can be summarized as follows:

    (1)   The defendant claims the prosecutor's summary of the testimony offered to rehabilitate the victim was unsupported by the record.

    (2)   The prosecutor said the defendant testified that his gun was registered and that he showed his registration to the police. The prosecutor then stated the police officer said it was not registered and "what's the difference" whether it was or was

not registered. The prosecutor also stated that the officer testified no registration had been recovered from the defendant. The defendant points out that the police officer said only that he searched the defendant and his wallet and found no registration. He contends the registration card may have been given to another officer.

(3) The prosecutor said he did not think there was "anything unbelievable about what the [victim] told [the jury]." The defendant claims this is reversible error as it "lends the prestige of the state to the [victim's] testimony."

(4) After pointing out several instances where the defendant's testimony had been impeached, the prosecutor stated the defendant was a liar and a con man. The defendant argues this statement was unsupported by the evidence and was inflammatory.

(5) The prosecutor said "the police didn't buy that bull" in commenting on the defendant's testimony. The defendant argues this improperly "lends the official police opinion to the weight of the state's case."

(6) The defendant argues it was improper for the prosecutor to say the defendant's claim of having been shot twice in another incident should have been corroborated by a hospital record, by his wife, or by "something."

(7) The prosecutor noted that the shooting occurred more than three years earlier and that the defendant thus had time to think about and reflect upon it. The defendant argues this was improper because it intimated a change in the defendant's version of events and this was not supported by the evidence.

(8) The prosecutor referred to the defendant's testimony that he had previously been shot as "bullshit." Defense counsel objected. The prosecutor apologized to the jury and was reprimanded by the court. He apologized again. The defendant argues he was prejudiced by the use of this inflammatory expletive.

In the instant case, the first five remarks complained of were neither objected to at trial nor raised as error in the defendant's motion for a new trial. The failure of the defendant to object to an issue at trial (*People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26; *People v. Buckley* (1976), 40 Ill. App. 3d 750, 353 N.E.2d 4), or to raise an issue in a motion for a new trial (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), constitute waiver of that issue for purposes of review.

The sixth remark complained of was raised in the motion for a new trial but on grounds other than the one defendant asserts on appeal. A

defendant cannot urge in the reviewing court a ground of error not stated in his objection below. *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Miller* (1977), 55 Ill. App. 3d 136, 370 N.E.2d 639.

■■ Although under certain circumstances this court may, as a matter of grace, take notice of errors that have not been properly preserved for review, we find no reason in the instant case to depart from the general rule. Substantial rights are not involved, and defendant does not argue to the contrary. Nor is the evidence closely balanced. Self-defense is the only defense raised by the defendant. The defendant's own testimony as to this defense, the only evidence offered on his behalf, is highly contradictory. Further, his testimony is directly impeached at least three different times. This is not, therefore, an appropriate case for the application of the so-called plain-error rule. See *People v. Pickett.*

■■ The comments numbered seven and eight were objected to at trial. We believe that in each instance, the action of the trial court was sufficient to cure the error resulting from the improper remarks made by the prosecutor. The trial court sustained the objection to the seventh remark. This alone was sufficient to cure any error. The eighth remark, while highly improper, was rendered harmless because the court sustained the objection and reprimanded the prosecutor, the prosecutor apologized twice to the jury, and, the prosecutor did not persist in his misconduct.

Accordingly the judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.