THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENT C. CROSS, Defendant-Appellant.

First District (5th Division)    No. 80-1003

Opinion filed May 8, 1981.

Ralph Ruebner and Sandra L. Thiel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Dean C. Morask, and Bruce Brandwein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendant was convicted of the offense of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)) and sentenced to a term of six years. Defendant appeals. We affirm.

The issues raised on appeal are: (1) whether the testimonial evidence of broken sperm found in the victim was properly admitted; and (2) whether certain remarks made during the prosecution's closing argument were improper, inflammatory and prejudicial.

Defendant was charged by information with unlawful restraint and aggravated battery. The victim was 22 years old at the time. She had previously attended a school for retarded children. At the time of the occurrence, she was employed at the Levee Rehabilitation Center.

Prior to defendant's trial, a competency hearing was held at which it was determined that the victim was competent to testify. The State then announced that it planned to prove that broken sperm were found in the victim by a doctor who conducted a pelvic examination of her later in the afternoon of the day of the occurrence. Defendant made a motion *in limine* prior to trial to exclude the evidence of this pelvic examination. The trial court did not rule on the defendant's motion at that time. During trial defendant renewed his motion *in limine* to exclude this evidence. The State contended that it was admissible to show motive. The motion was denied.

At trial, the following pertinent evidence was adduced during the case presented by the State. The victim testified that on Friday, April 6, 1979, at approximately 7:30 a.m. she left her home on North Greenview Avenue in Chicago to go to the Levee Rehabilitation Center. As she walked down Greenview Avenue, she was approached by defendant, whom she had never seen before, who asked her name and destination. Defendant offered her $10 if she would follow him. She voluntarily accompanied defendant to a building at Bosworth and Howard Streets.

Shortly after entering the building, the victim sat down to rest. Defendant grabbed her wrist and began pulling her towards a door. She resisted and defendant, calling her "a stupid broad," struck her in the face

with his fists. The victim, who had begun to scream and cry, was warned by defendant that if she did not "shut up" he would break her neck. Defendant struck her several times. During her testimony at trial, the victim could not recall any events which may have transpired from the point of her beating until she was encountered by two policemen in front of the building shortly after 8:30 a.m. However, Daniel Boudreau, one of the policemen, testified that he looked into a hallway on the fourth floor of the building and found the victim lying on the floor in front of Apartment 412. Her eyes and mouth were bleeding; there was a laceration on her nose and blood on the floor next to her. She had bruises on her arms and one of her teeth appeared missing. There was fresh blood on the carpeting, on the wall, and on the door of Apartment 412. He attempted to question her but she did not respond initially. After a second unsuccessful attempt to question her, the police officers tried to raise her to her feet. The victim told the officers to leave her alone. Officer Boudreau then observed defendant standing in the hallway across from Apartment 412. Defendant told him that the victim was his girlfriend and she had fallen down the stairs. The victim did not tell the officers that defendant had beaten her. She and defendant exited the building arm in arm. Defendant did not use force on her when they exited the building. Officer Boudreau confronted the victim again and asked her if she had fallen down the stairs. The victim responded affirmatively. Officer Boudreau examined the third, fourth and fifth floor stairways in the building and found no blood on these stairways.

The victim further testified that after leaving the building she and defendant went to a drugstore where defendant purchased peroxide and cotton balls. After making the purchase, they took a bus to a building some distance away. Defendant took her to an apartment located on the 13th floor of the building. The apartment was occupied by a white female and two black men. Defendant led the victim into the bathroom and told her to remove her clothing. She complied, removing all of her clothing except for the underpants. Defendant brought her other clothes, a red plaid skirt and a pink shirt, and gave her a wash cloth. At defendant's direction she washed her face. Defendant then wiped the inside of her mouth and her eyes. The victim washed near her vagina because it was "wet and sticky." While these events transpired, defendant told her his name was Kent. She was then permitted to telephone her mother and her employment supervisor. She told her mother that "they were getting me cleaned up. And take me to the hospital." Defendant also spoke with her mother but he identified himself by a name other than Kent. The victim attempted to make a second telephone call to her mother but defendant cut her off.

Defendant and the victim then left the building and took a bus down

to Devon Avenue where they exited the bus. Defendant bought her some milk, after which both took a number 151 bus. While defendant remained on the bus, she exited and walked home.

Her stepmother testified that the victim was terrified upon arriving home at approximately 1:15 p.m. that afternoon and was not wearing her own clothes. She was carrying her own clothes in a paper bag. The stepmother called the police who took her and the victim to the emergency room of St. Francis Hospital in Evanston, where she was treated by Dr. Rock and Dr. Jacobs.

Dr. Rock testified to the severe bruises about the victim's face. It was his opinion that such trauma could only be consistent with a fall down the stairs if she had landed only on her face. Dr. Rock had also examined her pelvic area, tested, analyzed and found broken sperm. Such breakage could have been caused by contact with water. The sperm could have been in her body for up to 48 hours in the condition in which they were found during examination.

Similarly, Dr. Jacobs testified to the contusions surrounding her eyes and mouth. He took X rays which showed the presence of an undisplaced fracture of her nasal bone. It was his opinion that although it would be possible that these bruises could be consistent with a fall down a flight of stairs, it was not likely.

Mrs. Miriam Caporusso, a microanalyst for the Chicago Police Department, testified that she examined vaginal and rectal slides which had been made during the medical examination. Her examination revealed the presence of possible human spermatozoa, but as no intact spermatozoa were revealed, she could not conclusively say that human sperm were present.

The victim testified that following his arrest she identified defendant from a five-man lineup as the man who had beaten her.

The sole evidence presented by the defense consisted of a stipulation between the parties that if the court reporter at the preliminary hearing was called to testify, she would state that at the hearing the victim never testified that she was offered $10 to go with the defendant.

The State moved to *nolle prosse* the unlawful restraint charge. Following deliberation, the jury returned a verdict of guilty of the offense of aggravated battery. Defendant's motion for a new trial was denied. The trial court sentenced defendant to six years in the penitentiary. Defendant appeals.

OPINION

Defendant first contends that the introduction into evidence of testimony as to the finding of broken sperm in the vagina of the victim was evidence of another crime and hence improperly admitted.

■■ It is a general rule that evidence of other crimes is inadmissible when independent of or disconnected from the crime with which defendant is charged. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805.) Defendant concedes, however, that evidence of other crimes may be admissible to prove motive, intent, identity, absence of mistake or modus operandi. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Such evidence has also been permitted where necessary to explain the circumstances of the crime which would otherwise be unclear or improbable. (*People v. Cole* (1963), 29 Ill. 2d 501, 194 N.E.2d 269; *People v. Turner* (1979), 78 Ill. App. 3d 82, 396 N.E.2d 1139.) The test of admissibility is whether the evidence of other crimes is so closely connected with the offense for which the accused is tried that it tends to prove guilt of that charge. (*People v. Sutton* (1976), 43 Ill. App. 3d 1008, 357 N.E.2d 1209.) Whatever testimony directly tends to show the defendant guilty of the crime charged is competent although it tends to show him guilty of another offense. *People v. Conrad* (1967), 81 Ill. App. 2d 34, 225 N.E.2d 713, *aff'd* (1968), 41 Ill. 2d 13, 241 N.E.2d 423.

Defendant asserts that the testimony as to the presence of broken sperm in the victim was so remote and collateral to the offense of aggravated battery with which he was charged and ultimately convicted that it was prejudicial, constituting reversible error. The State contends, however, that such evidence was admissible to show the circumstances surrounding the aggravated battery and the motive for defendant's action.

Although cited by neither defendant nor the State in the briefs, the case of *People v. Conrad* (1967), 81 Ill. App. 2d 34, 225 N.E.2d 713, *aff'd* (1968), 41 Ill. 2d 13, 241 N.E.2d 423, is so strikingly analogous to the instant case as to be dispositive of this issue. There defendant was charged with and convicted of the murder of his stepdaughter. Defendant raised the defense of insanity. He testified that on the day of the murder he last remembered the decedent alive but then experienced a blackout. The next event he could recall was the phone ringing, a short telephone conversation with his other stepdaughter, and finding the body of the decedent. In response to a hypothetical using defendant's version of the facts, the court psychiatrist testified that in his opinion the actor in that hypothetical question at the time of the murder was unable to distinguish between right and wrong only at the time he blacked out. Therefore, the jury would have had to believe defendant's testimony as to the blackout to find defendant insane at the time of the occurrence. At trial the State introduced photographs of the decedent showing her disheveled appearance and bruised body. It also introduced testimony of the finding of sperm in the vagina of the deceased. On appeal, defendant asserted that

the introduction of this evidence along with certain other errors committed in the course of the trial denied him a fair trial. The appellate court concluded, however, that such evidence was admissible. The photographs were of probative value in that if the jury disbelieved defendant's testimony as to the blackouts it could have concluded that defendant stabbed the decedent while assaulting her. Further, the court concluded the testimony as to the finding of sperm in the vagina of the decedent was properly allowed. The court noted that the body of the decedent was extensively bruised, her clothing was torn and her panties were inside out and backward. The court held that "[f]rom the evidence adduced by the prosecution the jury could have concluded that defendant had sexual intercourse with the deceased, and that the sexual intercourse was a motive for, or was part of the res gestae of, the homicide charged in the indictment." 81 Ill. App. 2d 34, 47, 225 N.E.2d 713, 719.

■■ Similarly, in the instant case the prosecution adduced evidence showing that defendant offered $10 to the victim to accompany him; that he took her to a large apartment building; that when the police found her she was lying in front of Apartment 412; that she had suffered severe lacerations to the eyes, nose and mouth and was bleeding from them; that at least one tooth had been knocked out; that her clothes were bloody; that defendant explained her condition to the police as resulting from a fall down the stairs; that the stairs were carpeted; that the stairs in the immediate vicinity evidenced no blood; that it was extremely unlikely that a fall down the stairs could cause such injuries; that fresh blood was found on the carpeting and walls of Apartment 412, the apartment in front of which the victim was found; that the victim testified that defendant had beaten her and threatened to break her neck; that defendant never took her to the hospital despite her injuries; that instead defendant took her to another apartment building and directed her to remove her clothing and wash herself; that her vagina was wet and sticky at that time; that she washed herself, including the vaginal area; that broken sperm were found in her vagina and that contact with water could cause the sperm to deteriorate; that defendant gave her a change of clothes; that when the victim finally arrived home she was terrified. From the evidence adduced by the prosecution in the instant case, as in *Conrad*, the jury could have concluded that the aggravated battery was a concomitant part of the entire transaction and that sexual intercourse was a motive for and part of the res gestae of the aggravated battery charged in the information. The defendant cannot by multiplying his crimes diminish the volume of competent testimony against him. (*People v. Cione* (1920), 293 Ill. 321, 332, 127 N.E. 646, 650.) Accordingly, the testimony of broken sperm found in the vagina of the victim was admissible.

Defendant next contends that certain remarks made by the prosecutor during closing argument were improper and prejudicial necessitating reversal of his conviction.

Generally, a prosecutor is permitted great latitude in closing arguments. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.) Reviewing courts are reluctant to set aside a verdict on the grounds of remarks made during closing arguments unless those remarks are clearly prejudicial. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) In determining whether the prosecutor's comments or arguments constitute prejudicial error, the test employed is whether the jury would have reached a contrary verdict had the improper remarks not been made. (42 Ill. App. 3d 408, 415, 355 N.E.2d 634, 641.) Each case in which it is contended that the prosecutor has made improper comments must be decided on its own facts. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 806, 408 N.E.2d 280, 290.

■■ ■ Defendant first asserts that the prosecutor's remarks in closing argument that defendant "used" the body of the victim and "violated" her were unsupported by the evidence. However, the record indicates defendant neither objected to the alleged impropriety of these remarks during trial nor in his post-trial motion for a new trial. The general rule is that the failure of the defendant to raise an issue in a motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Winters* (1963), 29 Ill. 2d 74, 193 N.E.2d 809; *People v. Carroll* (1977), 49 Ill. App. 3d 387, 364 N.E.2d 408.) Even had defendant preserved his objection, it is without merit. The testimony showing that broken sperm had been found in the victim's vagina had been properly admitted into evidence to show defendant's possible motive in committing the offense charged. The motive of a defendant for committing an offense is a proper subject of comment by a prosecuting attorney in closing argument. (*People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899.) The prosecutor's remarks did not state that defendant had raped the victim, a term having specific legal significance. (See *People v. Anderson* (1950), 406 Ill. 585, 94 N.E.2d 429; *People v. Schultz* (1913), 260 Ill. 35, 102 N.E. 1045.) Rather, they suggested that the desire for sexual intercourse with her arguably established the motive for the offense charged and, accordingly, were not beyond the bounds of proper comment.

Defendant next objects to the remark "Where did the defendant get a change of clothes from?" made by the prosecutor during his closing argument. Defendant contends this remark suggested that he had committed other similar crimes on other days and as such was unsupported by the evidence and was so prejudicial as to require reversal of his conviction.

■■ Defendant concedes that he did not object to this "brief comment" at trial or in his motion for a new trial. As previously discussed, such failure ordinarily constitutes a waiver of the issue. Nonetheless, defendant, characterizing this remark as plain error, petitions the court to consider the issue under Supreme Court Rule 615(a), which provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).) Review under this rule is permissive and not mandatory. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Despite defendant's characterization, this remark cannot be considered plain error. A prosecutor is permitted to comment upon or to inquire about evidence adduced at trial and may draw reasonable inferences from such evidence, even if those inferences are unfavorable to the defendant. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) Testimony that defendant had given the victim a change of clothing had been properly admitted into evidence and therefore it was open to comment by the prosecution.

Accordingly, we see no reason to depart from the general rule that issues not properly preserved are waived, and we decline to consider at greater length defendant's objection under Supreme Court Rule 615(a). Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

For the reasons cited herein, we affirm.

Affirmed.

LORENZ and WILSON, JJ., concur.