THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DeWAYNE MOORE, Defendant-Appellant.

First District (4th Division)    No. 80-1232

Opinion filed December 17, 1981.

652

LINN, J., dissenting.

Ralph Ruebner, of State Appellate Defender's Office, and Silets and Martin, both of Chicago (Shelly B. Kulwin and William K. McVisk, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Jannice K. Kandell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, defendant, DeWayne Moore, was convicted of murder, armed robbery and armed violence. (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1, 18—2, 33A—2.) He was sentenced to serve concurrent terms of 40 years for murder and 15 years for each of the other convictions. On appeal, defendant contends that he was denied his sixth amendment rights to the effective assistance of counsel; that he was denied a fair trial by the introduction of evidence of other crimes; and, in a supplemental brief, that the trial court erred in failing to tender a voluntary manslaughter instruction submitted by defense counsel.

We reverse.

At the preliminary hearing, Mrs. Bok Kim, the wife of the proprietor of the Song Wig Shop at 3515 South Halsted Street in Chicago, testified with the aid of a Korean interpreter. She stated that defendant came into the store about 3:30 p.m. on November 24, 1978, and looked at some merchandise. He then pushed her brother-in-law, Hun Chong Kim, into the corner, pulled a gun from his pocket and took necklaces and other jewelry from the showcases. Mrs. Kim grabbed defendant and called for help. Her husband, Chong Kim, came in from the back of the store and grabbed defendant before defendant shot him twice. Two men then came into the store and defendant was arrested. She stated that her husband did not have a gun when he came into the store, that she did not know whether he touched defendant's gun, and that he was shot at close range.

Prior to trial, defense counsel filed a motion to suppress oral incriminating statements made by the defendant while he was in custody, as well as certain physical evidence which was seized by the police when defendant was apprehended. He later withdrew the motion and filed a demand for trial. The State filed a motion *in limine* to bar the defense from using an exculpatory statement made by defendant that the shooting was accidental, and this motion was granted by the court.

At trial, Mrs. Kim, through a Korean interpreter, testified to the events which transpired at the shop on November 24, 1978. She stated that defendant entered the store about 4 p.m. where she was working alone. Her husband, their three minor children and her brother-in-law were in the rear of the store. Mrs. Kim stated that while she was waiting on

defendant, three women came into the shop. She then requested her brother-in-law to come to the front and assist. Thereafter, two more people came into the store. All of the customers left except defendant who continued to inquire about the prices of necklaces and sunglasses. Mrs. Kim and defendant also had a conversation concerning placing initials on the sunglasses, and Mrs. Kim told him that she would put them on at no extra charge. Defendant placed the necklaces around his neck and tried on the sunglasses. He then told her brother-in-law to move to one side, pulled a gun from his coat pocket and took gold necklaces and bracelets from the showcases.

Defendant then turned around and Mrs. Kim grabbed him from behind on the upper part of the arm. They struggled for several seconds and she called her husband for help. Defendant then bit her arm. When her husband entered, defendant turned around and shot him from a distance of 5 or 6 feet. As the victim fell forward, he grabbed defendant's arm and defendant shot again. Mrs. Kim then released one of defendant's arms and called for help. Two unidentified men responded and she told them that defendant shot her husband. The three of them detained defendant until police arrived moments later.

Mrs. Kim further testified that her husband did not have a chance to touch the gun and that no one but defendant handled the weapon before the shooting. She also identified the necklaces taken from defendant as those she had shown to him in the store.

Hun Chong Kim, who also testified through a Korean interpreter, corroborated this sequence of events. He stated that he was in the store with Mrs. Kim when defendant tried on the sunglasses, then pulled out a gun and threatened the two of them. Defendant pushed him aside, held the gun in one hand and opened the showcase and took jewelry with the other. Mrs. Kim called for help, and as soon as Mr. Kim came into the store defendant fired a shot. Defendant and Mr. Kim stood about 5 or 6 feet apart at the time of the shooting. The witness stated that he heard two shots and did not see anyone but defendant touch the gun.

Police youth officers Ronald Mainellis and Mary Dahl testified that they were on patrol in their squad car about 4 p.m. on November 24, 1978, when they were flagged down by a citizen at 35th and Halsted Streets who told them there was a man in the store with a gun. They pulled their vehicle up to the store where they observed a male with blood on his shirt coming out of the store saying that he had been shot. Officer Mainellis proceeded inside and observed Mrs. Kim, defendant and two other males struggling just inside the door. The officer apprehended defendant and noticed that he was wearing a glove on his left hand. Mrs. Kim told the officer that defendant was the man who shot her husband. Defendant was then handcuffed and placed in the squad car where Dahl also observed

that he was wearing a glove on his left hand. Officer Dahl attempted to steady the victim and asked him whether the man in the car was the person who shot him. The victim answered in the affirmative. A small child approached Mainellis and handed him a gun recovered from the doorway area; Mrs. Kim handed him two small gold bracelets and a set of keys which she found on the floor. Defendant was then taken to the station where police removed four necklaces from his neck, and a pocket watch, two rings, a cigarette lighter, two other watches and $3.35 in currency from his person.

Officer Bunk stated that he received a set of keys from Officer Mainellis at the station, and he and his partner returned to the scene of the crime. They located a car illegally parked in an alley behind 3529 South Halsted Street and the keys received from Mainellis fit this car. A subsequent vehicle check revealed that the car was registered to defendant.

The chief medical examiner of Cook County testified that he performed an autopsy on the body of Chong Kim, and in his opinion the cause of death was a bullet wound to the abdomen which also involved the lung, liver and spleen. He also conducted a visual examination of the clothing worn by the victim and found a hole which corresponded to the bullet wound in the body, but he did not see any powder burns or stripplings.

Donald Gunnell of the Chicago Police Department Criminalistics Division testified that he examined the weapon which was recovered from the scene. In his opinion, the bullet retrieved from the body of the victim was fired from this weapon. He stated that the two expended cartridges found in the store were also fired from the same weapon.

The defendant testified that he was 19 years of age. He entered the Song Wig Shop about midafternoon on November 24, 1978, after parking his car at 31st and Halsted. He looked at some jewelry and sunglasses and had a conversation with Mrs. Kim about having his initials put on the sunglasses and on a cigarette lighter. She agreed to put his initials on both items at no extra charge if he purchased the sunglasses. Defendant then looked at the necklaces and started to go out of the store to get his cigarette lighter from his car when Mrs. Kim grabbed him and began screaming in Korean. Mr. Kim then came out of the back with a gun in his hand and walked quickly up to defendant. Defendant grabbed the gun because he was afraid Mr. Kim would shoot him. A struggle ensued and the gun discharged twice. Two males then entered the store and held him, but defendant stated that he was not attempting to leave. He also stated that he had driving gloves in his coat pocket when he entered the store and had the right-hand glove in his possession when he arrived at the police station.

On cross-examination, defendant stated that he was wearing his own personal jewelry when he entered the store and that he had $35 in his possession which was taken by the police at the station. He admitted that he was wearing two digital watches, two bracelets and two rings, and had a pocket watch and keys in his possession. He stated that he purchased two of the watches and two of the chains on Maxwell Street and received the other two chains from his former girlfriend. With regard to the shooting, defendant stated that Mr. Kim was holding the gun in his hand as he came up to defendant. They wrestled with the gun; when the actual shot was fired, Kim was holding the gun and shot himself in the chest. Over defense counsel's objection, defendant, with the aid of a deputy sheriff, demonstrated how the shooting occurred. Defendant stated that when Kim was about 3 feet away from him, he grabbed the gun and tried to hit it against the wall so it would fall out of his hand. When the shot was fired, Kim's arm was pointed toward his own body. They continued to struggle with the gun after Kim was shot. Defendant denied having a gun, taking any necklaces out of the showcase, putting any on his neck, or wearing a glove. He also stated that all of the prosecution's witnesses were lying.

Officer Mainellis testified in rebuttal that when he apprehended defendant inside the store defendant was wearing a glove on his left hand. He also stated that he recovered a cigarette lighter from one of defendant's pockets at the station and $3.35 in currency as reported on the inventory slip prepared by his partner while he was present.

Officer Quinn testified that he was assigned to investigate the homicide in question. After defendant was advised of his constitutional rights, he acknowledged that he understood them, then stated that he found the gun on the previous day when he was driving in an alley and knocked over a garbage can. When he exited his car to inspect the damage, under the can he found a loaded gun which he brought with him to the wig shop. He also stated that he did not mean to shoot, but during the struggle to get out of the store he accidentally shot Mr. Kim. Defendant also told him that he had seen a similar incident on television the night before.

During the jury conference, defense counsel offered an instruction on voluntary manslaughter which was objected to by the prosecution. The court refused the instruction after a finding that there was no evidence to support it; however, an instruction was given on the justifiable use of force. The jury returned a verdict of guilty on the charges of murder, armed violence and armed robbery. Motions for a new trial and in arrest of judgment were subsequently denied, and defendant now appeals.

Defendant first contends he was deprived of his sixth amendment right to the effective assistance of counsel. He claims that his court-

appointed counsel was ill-prepared and the representation he received was merely perfunctory.

■■■ It is well settled that in order to establish incompetence of court-appointed counsel, a defendant must demonstrate that his counsel was actually incompetent, as manifested in the performance of his duties as a trial attorney, which resulted in substantial prejudice to the defendant without which the outcome of the trial would probably have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203, 211; *People v. Talley* (1981), 97 Ill. App. 3d 439, 443, 422 N.E.2d 1084, 1088.) Competency of counsel is determined from an examination of the totality of counsel's conduct at trial (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677, 685); however, our review of counsel's competency does not extend to those areas involving the exercise of judgment, discretion or trial tactics (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 22, 302 N.E.2d 3, 5).

■■ Defendant alleges that counsel's incompetence is demonstrated by his failure to have the *voir dire* proceedings transcribed. While conceding that the mere waiver of a record of the *voir dire* does not constitute actual incompetence (*People v. Gordon* (1980), 82 Ill. App. 3d 906, 912, 403 N.E.2d 570, 575), he claims that the failure to do so precluded him from preserving any issues on appeal that might arise out of improprieties that occurred during the *voir dire*, and evidences counsel's unwillingness to have his lack of preparation discovered by subsequent counsel. We find both of these contentions without merit. In *People v. Hines* (1981), 94 Ill. App. 3d 1041, 1052, 419 N.E.2d 420, 428, this court rejected a similar argument that incompetence must be assumed from the absence of a record of the *voir dire*; and defendant's allegation that trial counsel did not record the proceedings in order to hide his lack of preparation amounts to mere conjecture and speculation which is insufficient to establish prejudice warranting reversal. *People v. Thomas* (1972), 51 Ill. 2d 39, 44, 280 N.E.2d 433, 436.

■■■ Defendant also argues that trial counsel's failure to attempt to prevent the State's exclusion of blacks from the jury is further evidence of his incompetence, and without a record of the proceedings defendant is precluded from raising the matter of the "systematic exclusion" of blacks from the jury. This matter was raised and rejected at the hearing on defendant's motion for a new trial, and the record before us does not substantiate defendant's claims. We note that defendant has not availed himself of the opportunity to reconstruct the record as provided by Supreme Court Rules 323(c) and 612(c) (Ill. Rev. Stat. 1979, ch. 110A, pars. 323(c), 612(c)), and without an adequate record we cannot further consider defendant's contentions in this matter. *People v. Gordon* (1980), 82 Ill. App. 3d 906, 913.

Defendant also alleges that numerous errors were committed by him during counsel's cross-examination of the prosecution's witnesses. Defendant first cites the meaningless examination of three of these witnesses, waiver of cross-examination of the arresting officer, and the failure to discover if any statements had been made by other individuals who were present in the area at the time of the occurrence. We have considered each of these allegations and find them to be matters of judgment and trial strategy which do not establish incompetency. (See *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) We have also reviewed defendant's allegations concerning counsel's failure to attempt to impeach Mrs. Kim with the statement she made at the preliminary hearing regarding the distance between defendant and her husband at the time of the shooting. We have concluded, however, that this may also be considered a matter of trial tactics and does not necessarily indicate that counsel was not prepared or actually incompetent. (See *People v. Stein* (1977), 51 Ill. App. 3d 421, 366 N.E.2d 629.) We bear in mind that defendant is entitled to competent, but not perfect representation (*People v. Murphy* (1978), 72 Ill. 2d 421, 438), and in establishing actual incompetence a defendant cannot rely upon speculation as to the outcome of his case if the representation had been of a higher quality (*People v. Thomas* (1972), 51 Ill. 2d 39, 44). Furthermore, the fact that another attorney in the better light of hindsight might have handled the trial in a different manner is not an indication of incompetence. *People v. Robinson* (1979), 70 Ill. App. 3d 24, 27, 387 N.E.2d 1114, 1116.

■■ Defendant next contends that counsel's incompetence was demonstrated by his failure to object to evidence of other crimes. He refers to the testimony given by the arresting officer regarding the items of jewelry taken from defendant at the time of his arrest. The record reveals that counsel reserved his objections on this matter until the State moved to admit these items into evidence. At that time he argued strenuously and successfully precluded the entry of several of these items. It is generally held that decisions on when and what objections should be interposed are matters of trial strategy (*People v. Grant* (1976), 38 Ill. App. 3d 62, 70, 347 N.E.2d 244, 251), and incompetence is not established by the mere failure to object to evidence even if it is inadmissible (*People v. Murphy* (1978), 72 Ill. 2d 421, 438; *People v. Bell* (1981), 95 Ill. App. 3d 803, 806, 420 N.E.2d 497, 500). Defendant further contends, however, that this error was compounded when defense counsel questioned defendant about several of the items and the prosecution conducted an extensive cross-examination on all of them. This was clearly a matter of trial strategy and did not constitute incompetence. (*People v. Watson* (1981), 98 Ill. App. 3d 296, 301, 424 N.E.2d 329, 334.) After reviewing the record as a whole, and in light of the overwhelming evidence against defendant, we do not

believe that he was prejudiced by the representation he received so that the outcome of the trial would probably have been different. See *People v. Scott* (1981), 94 Ill. App. 3d 159, 418 N.E.2d 805.

■■■ Defendant's second contention is that he was denied a fair trial by the introduction of evidence of other crimes. It is well settled that evidence of other crimes committed by defendant, other than the one for which he is being tried, is inadmissible; however, evidence of other crimes is admissible if relevant for any purpose other than to show a propensity to commit a crime. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200, 1204.) Evidence which constitutes a narrative regarding the crime and defendant's arrest may be admitted into evidence even though it suggests other criminal activity. (*People v. Hagen* (1978), 63 Ill. App. 3d 944, 948, 380 N.E.2d 954, 957; *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 881, 320 N.E.2d 529, 533.) The record discloses that in his testimony the arresting officer related the items which were found on defendant at the time of his arrest. Defense counsel did not object to this testimony at the time but did object to the admission of these items into evidence and moved for a mistrial. The trial court sustained defendant's objection to the admission of the rings, watches, bracelets and lighter, ruling that they had no probative value. However, the trial court determined that there were no grounds for a mistrial since the evidence presented by the police officer was permissible, and, further, that no objections had been raised during direct examination. We find no error in this ruling.

■■ Defendant then testified as to his ownership of the cigarette lighter, gloves, coat and necklaces. The prosecution then delved into these matters on cross-examination, and also questioned defendant on items which had been ruled inadmissible. Over defense objections, the trial court allowed the prosecution to pursue this line of cross-examination for purposes of impeaching the credibility of the witness. In testifying in his own behalf, defendant was subject to legitimate cross-examination by the State, and the extent of this cross-examination rested in the sound discretion of the trial court. (*People v. Williams* (1977), 66 Ill. 2d 478, 487, 363 N.E.2d 801, 805.) Since defendant placed his credibility at issue by taking the stand, we do not believe that it was error to allow the cross-examination for impeachment purposes. *People v. Brown* (1976), 41 Ill. App. 3d 641, 647, 354 N.E.2d 602, 608.

■■ References were made to defendant's testimony regarding these items during closing argument, and defendant also claims that they prejudiced his right to a fair trial. We find no merit in this contention. The reference to defendant's affinity for jewelry was a proper inference to be drawn from the evidence and, therefore, a legitimate subject of comment by the prosecution (see *People v. Cross* (1981), 96 Ill. App. 3d 268, 421 N.E.2d 262), and the jury was admonished that argument must be based

on the evidence. In order for remarks to be considered reversible error, the comments must result in substantial prejudice to the accused (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, 434). Our review indicates that this is not such a case, and that defendant was not denied his right to a fair trial because of the testimony and comments on the jewelry.

Defendant's final contention is that he was deprived of a fair trial by the court's refusal to tender a voluntary manslaughter instruction to the jury which was submitted by his counsel. He maintains that by giving a self-defense instruction the court demonstrated that defendant's testimony was sufficiently credible to allow the jury to believe that he acted in self-defense and was thus required to give the voluntary manslaughter instruction. In support of his contention, defendant cites *People v. Lockett* (1980), 82 Ill. 2d 546, 553, 413 N.E.2d 378, 382, where the supreme court stated that when the evidence supports submission of an instruction on the justifiable use of force, a tendered Illinois Pattern Jury Instruction, Criminal, No. 7.05 (1968) (hereinafter cited as IPI Criminal) on voluntary manslaughter should also be given. The State responds that the trial court properly refused the instruction concerning voluntary manslaughter since there was no evidence to support it.

■■ When there is evidence of record in a homicide case which, if believed by the jury, would reduce the crime to manslaughter, a manslaughter instruction should be given. *People v. Lockett* (1979), 75 Ill. App. 3d 183, 185, 394 N.E.2d 38, 40.

Several Illinois court opinions have held that if the evidence supports a self-defense instruction, as in this case, it will also support a voluntary manslaughter instruction. (*People v. Lockett* (1980), 82 Ill. 2d 546, 551, 413 N.E.2d 378, 381; see *People v. Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52; *People v. Zertuche* (1972), 5 Ill. App. 3d 303, 306, 282 N.E.2d 201, 203; *People v. Johnson* (1971), 1 Ill. App. 3d 433, 435, 274 N.E.2d 168, 170.) We agree with the rule stated in those cases. In *People v. Dortch* (1974), 20 Ill. App. 3d 911, 914, 314 N.E.2d 324, 326, it was stated:

> "This rule is applicable even if the theory of defense is inconsistent with the possibility that the defendant is guilty of the lesser crime. [Citations.] A defendant in a criminal case is entitled to have the jury consider any legally recognized defense theory which has some foundation in the evidence, however tenuous. [Citations.] Very slight evidence on a theory of defense will justify the giving of an instruction. [Citation.]"

Section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)) provides that a person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify

or exonerate the killing, but his belief is unreasonable. IPI Criminal No. 7.05 would have instructed the jury to that effect.

■■ After carefully reviewing the record, we believe that the trial court erred in refusing the tendered instruction. The jury could have concluded from all the evidence before it, despite some inconsistencies in defendant's testimony, that defendant killed Kim in the unreasonable belief that he was justified in doing so. Since the evidence was conflicting, it was for the jury, with the benefit of proper instructions, to decide whether the killing was murder or manslaughter or justified as self-defense. (*People v. Dortch* (1974), 20 Ill. App. 3d 911, 913.) We, therefore, must reverse and remand this cause for a new trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ROMITI, P. J., concurs.

JUSTICE LINN, dissenting:

I respectfully dissent. Even assuming that the approach taken by the majority is correct, and that it was error for the trial court to refuse defendant's instruction on voluntary manslaughter after tendering an instruction on self-defense, I do not believe that the omission requires reversal in light of the verdicts rendered by the jury. In addition to being found guilty of murder, defendant was also found guilty of armed robbery and armed violence. This indicates that the jury believed that defendant was the person who was armed with the gun and disbelieved defendant's version of the events since he had testified that after Mrs. Kim grabbed him by the arm, Mr. Kim entered the store armed with a gun, and in the struggle that ensued, Mr. Kim accidentally shot himself in the chest.

In *People v. Negron* (1979), 77 Ill. App. 3d 198, 395 N.E.2d 1055, decided by this court, the defendant was charged in a multicount indictment and found guilty of murder and robbery. On appeal, defendant contended, *inter alia*, that the failure of the trial court to give instructions to the jury *sua sponte* on the justifiable use of force was plain error. In that opinion this court commented that in finding the defendant guilty of robbery, "the jury effectively precluded any possibility that defendant's use of force with (and murder of) the victim was justified," and consequently that even if the trial court erred in not instructing the jury, the failure could not have deprived the defendant of a fair trial. 77 Ill. App. 3d 198, 206.

I find this reasoning applicable to the instant case. The instruction tendered by the defendant indicated that he was relying on section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)). This section applies to one who intentionally and knowingly kills another under an unreasonable belief that the killing was necessary in order to defend himself. (*People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461.) In finding the defendant guilty of armed robbery and armed violence the jury determined that defendant was the one who was armed, obviously disbelieved defendant's claims that he was threatened by the proprietors of the store, and rejected any theory of self-defense. The verdicts also indicate that the jury determined that the killing took place during the commission of a forcible felony, and that defendant was guilty of murder.

Therefore, in addition to my belief that the evidence presented in the trial court clearly did not support an instruction for voluntary manslaughter, I also find, in light of the verdicts returned by the jury, that the outcome would have been the same even had the instruction been given. Furthermore, in view of the overwhelming evidence of defendant's guilt found in the testimony given by the State's witnesses along with the physical evidence that was presented, and considering the testimony given by defendant, I believe that any error in failing to submit the instruction on voluntary manslaughter was harmless. (See *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343.) I would affirm the convictions.